[Civ. No. 61985. Second Dist., Div. Four. Jan. 19, 1982.]

BANK OF BEVERLY HILLS, Plaintiff and Respondent, v.
JACK CATAIN, JR., et al., Defendants and Appellants.

**COUNSEL**

Lawrence Brown for Defendants and Appellants.

Cohen & Ziskin, Terry S. Kaplan and Jacob N. Segura for Plaintiff and Respondent.

## OPINION

## WEIL, J.*—

### I

### PROCEDURAL BACKGROUND

Defendants appeal from a judgment adverse to them that followed the trial court's order granting respondent's motion for summary judgment; appellants' motion for reconsideration of that order was subsequently denied.

On November 3, 1980, appellants filed their notice of appeal from the order granting summary judgment, from the denial of the motion for reconsideration, and from the judgment entered on September 5, 1980; however, only the judgment itself is properly appealable to this court. (*Gutierrez* v. *Petoseed Co.* (1980) 103 Cal.App.3d 766, 768 [163 Cal.Rptr. 313]; *Integral Land Corp.* v. *Anderson* (1944) 62 Cal.App.2d 770 [145 P.2d 364].)

### II

### PRINCIPAL ISSUES AND RULING

Appellants claim the trial court erred in refusing to consider parol evidence to vary the manner of payment of a promissory note given to a bank, and in allowing excessive attorneys fees. ▮ We agree with the former claim, thus making consideration of the latter issue unnecessary.

### III

### FACTUAL BACKGROUND

On March 20, 1978, appellants borrowed $40,000 from respondent bank, and in exchange executed and delivered a promissory note which read in pertinent part: "On demand, or if no demand be made then on September 20, 1978, after date, for value received, I/We promise to

---

*Assigned by the Chairperson of the Judicial Council.

pay The Bank of Beverly Hills or order, at its Beverly Hills Office, the principal sum of FORTY THOUSAND AND NO/100 DOLLARS, together with interest from date hereof at the rate of PRIME plus 2-1/2% AS IT MAY VARY FROM TIME TO TIME. . . .

"If this note is not paid when due, I/We promise to pay all costs and expenses of collection and reasonable attorney's fees incurred by the holder hereof on account of such collection, whether or not suit is filed thereon. . . ."

No demand was made prior to September 20, 1978; but when the appointed day came and went appellants had not paid the principal obligation. Thereafter, the bank brought suit to recover the principal, interest, and collection costs due on the note.

Appellants' answer to the bank's complaint admitted the execution and nonpayment but went on to deny that either $40,000 or any part thereof was then due and owing. In an affirmative defense defendants alleged that plaintiff had represented that upon maturity a quarterly or monthly repayment schedule would be adopted and the terms of the note renegotiated. Respondent next filed a noticed summary judgment motion. After summary judgment was granted, appellants moved for reconsideration. In support of their motion, appellants relied largely upon the declaration of Frank DiTomaso, formerly chairman of the board and chief loan officer who had negotiated the subject loan, and upon a "Loan Approval Sheet" dated March 16, 1978, in the bank's files. In his declaration, Mr. DiTomaso stated:

". . . . . . . . . . . . . . . .

"4. I recall the transaction involved in the within litigation and, in general, my negotiations and agreements with Mr. Catain, Mr. Dugan, and Mr. Miulli.

"5. To my best recollection, based upon the fact that these gentlemen were engaging in a new business and in reliance, primarily, upon the financial statement of Mr. Catain, it was agreed that the total sum of $40,000.00 would be available for the loan, that the parties would execute an interest-only Promissory Note for a period of six months and that, after the six month maturity date on the Promissory Note, there was to be a re-payment schedule as to the full principal amount of the

loan. The exact terms of such re-payment schedule as discussed and as agreed upon between all parties should be reflected on the Loan Approval Sheet which is located within the loan file in the possession of BANK OF BEVERLY HILLS.

"6. Such re-payment agreement and all negotiations and agreements made between these gentlemen and myself, acting on behalf of BANK OF BEVERLY HILLS, as may be reflected in the subject loan file, follow the normal, customary, and generally accepted practices in the banking and loan industry under the circumstances presented in this matter, and certainly followed the customary practices of BANK OF BEVERLY HILLS at the time of this transaction.

"7. It is my belief and opinion that, had my association with BANK OF BEVERLY HILLS not been terminated in April 1978, the subject loan would have been placed on a re-payment schedule in accordance with my agreement with Mr. Catain, Mr. Muilli and Mr. Dugan, and as is reflected on the Loan Approval Sheet in the loan file."

The "Credit Memorandum" section of the proffered "Loan Approval Sheet" was completed on March 16, 1978, as follows: "Purpose—to start a used car lot on Reseda Blvd. Reseda (Mr. C. Auto Sales).

"The strength of the loan is in Mr. Catain.

"Repayment—to be converted to a repayment program of 4,000 plus interest each quarter from cash flow of car lot or (secondary) personal income."

In its minute order denying reconsideration the trial court stated: "The notation of 3/16/78 and the declaration of Frank DiTomaso regarding the negotiations preceding the execution of the note on 3/20/78 do not raise an issue of fact which would, or should, affect the court's ruling."

All parties to this appeal have construed the trial court's ruling as rejecting the proffered evidence pursuant to the parol evidence rule.

The trial court also awarded attorney's fees of $8,444.46 to plaintiff's counsel which sum exceeded the amount normally payable under a local court rule for contested promissory note cases.

## IV

### CONTENTIONS ON APPEAL

Appellants contend:

1. That summary judgment was improperly granted because a triable issue of fact existed as to whether the promissory note constituted the entire agreement between the parties to the loan, and parol evidence in the form of the DiTomaso declaration and loan approval sheet is admissible to prove the entire agreement; and

2. The attorney's fee award of $8,444.46 was unsupported by sufficient documentation, and constituted an abuse of the court's discretion because the sum was more than three times higher than the court's recommended attorney fee schedule's amount for contested matters.

Respondent counters that:

1. The parol evidence rule precludes admission of any evidence of contemporaneous oral agreement which contradicts the express terms of the note; and

2. The award of attorney's fees and costs was sanctioned by the terms of the note, was reasonable, and was based upon sufficient evidence.

## V

### DISCUSSION

1. The Parole Evidence Rule Issue.

██ We note initially that summary judgment may properly be granted only where no triable issue of material fact exists and where the moving party's affidavits set forth sufficient facts to sustain a judgment in its favor (Code Civ. Proc., § 437c; *Exchequer Acceptance Corp.* v. *Alexander* (1969) 271 Cal.App.2d 1 [76 Cal.Rptr. 328]; *Varco-Pruden Inc.* v. *Hampshire Const. Co.* (1975) 50 Cal.App.3d 654 [123 Cal.Rptr. 606].) ██ In addition, it is well established that the party opposing a motion for summary judgment cannot merely rely upon his answer to the complaint to raise such triable issue of material fact, but must rather demonstrate that facts essential to justify opposition exist, as

appellants have sought to do here through introduction of the Di-Tomaso declaration and loan approval sheet. (See *Orsetti* v. *City of Fremont* (1978) 80 Cal.App.3d 961 [146 Cal.Rptr. 75].) Therefore, a triable issue was raised, and summary judgment improperly granted, only if these documents were admissible evidence within the meaning of the California parol evidence rule. (See Civ. Code, § 1625; Code Civ. Proc., § 1856.)

In *Sapin* v. *Security First National Bank* (1966) 243 Cal.App.2d 201 [52 Cal.Rptr. 254] a widow sought to introduce evidence of a purported oral promise by the payee of a note that payment would not be demanded until the real property securing the note had been sold to show the true intention of the parties to an incomplete instrument. The note itself was a form installment interest-only second trust deed note with dates of installment payments left blank. The Court of Appeal analyzed the question in terms of consistency between the writing and the alleged oral understanding: "Are the terms of the agreement which plaintiff seeks to prove consistent with the terms of the note? If consistent, the note itself reflects only a partial integration of the understanding of the parties, and parol evidence of a contemporaneous oral agreement is admissible to show the true intent of the parties with respect to the note. (Civ. Code, §§ 1625, 1639; Code Civ. Proc., 1856; *American Industrial Sales Corp.* v. *Airscope, Inc.*, 44 Cal.2d 393, 397 [282 P.2d 504, 49 A.L.R.2d 1344]; *Mangini* v. *Wolfschmidt, Ltd.*, 165 Cal.App.2d 192, 198-201 [331 P.2d 728].) If inconsistent, the note ·may not be varied or supplemented by evidence of the parties' contemporaneous oral understandings.... Specifically, the allegation that the principal becomes payable at the time the property is sold is inconsistent with the term of the note specifying payment of principal in installments; and the allegation that defendants cannot demand payment until the security has been sold is inconsistent with the legal tenor of the note as an unrestricted promise to pay." (243 Cal.App.2d 201, 204-205.)

Thereafter, the California Supreme Court dealt with the parol evidence rule in *Masterson* v. *Sine* (1968) 68 Cal.2d 222 [65 Cal.Rptr. 545, 436 P.2d 561]. There, in construing two grantors' option to repurchase in a deed conveying their ranch to a sister of one grantor and her husband, the Supreme Court held admissible extrinsic evidence regarding the price to be paid and a separate collateral agreement that the option was to be nonassignable so as to "stay in the family." In so doing, the court rejected the orthodox "facially complete" test in determining the ultimate issue of whether a document was intended by

the parties to constitute an "integration," or a complete and final expression of their agreement. Such intent should be inferred, the court reasoned, from an examination of the circumstances as a whole, rather than from an exclusive evaluation of the writing; the paramount inquiry was to center upon the credibility of the proffered oral evidence, which should be "excluded only when the fact finder is likely to be misled." (68 Cal.2d 222, 227.) The Supreme Court posited two standards of credibility: (1) that of the Restatement of Contracts, section 240(1)(b) permitting proof of a collateral agreement if it "'might naturally be made as a separate agreement by parties situated as were the parties to the written contract,'" and (2) that of the Uniform Commercial Code at section 2-202, which would exclude still less oral evidence, permitting its introduction in any case in which it does not represent terms which "would certainly" have been included within the written memorandum.

In rejecting the notion that the writing alone is to be consulted in determining integration to bar parol evidence, the court gave the following illustration of the new rule it was formulating: "For example, a promissory note given by a debtor to his creditor may integrate all their present contractual rights and obligations, or it may be only a minor part of an underlying executory contract that would never be discovered by examining the face of the note." (68 Cal.2d at p. 227; see also *Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373].)

In *Coast Bank* v. *Holmes* (1971) 19 Cal.App.3d 581 [97 Cal.Rptr. 30], relied upon by respondent herein, the maker of a promissory note, Holmes, sought to introduce evidence that the payee bank orally promised to cancel the debt if Holmes's own debtor, Reid, suffered foreclosure on certain property wiping out Holmes's trust deed on that property. The note itself provided it was due and payable "On demand, if no demand then 180 days from date. . . ." In determining that "clearly inconsistent collateral oral agreements should have been excluded," the Court of Appeal attempted to distinguish the *Masterson* dicta as follows: "We do not view the passing comment (of *Masterson*) as a disapproval of the long-settled rule that in the absence of fraud, mistake, lack or failure of consideration, or nonoccurrence of a condition precedent, a prior or contemporaneous oral agreement that a promissory note is not to be payable according to its terms is not a defense to an action on the note." (19 Cal.App.3d 581, 589, citing, in addition to *Sapin, Oakland Medical Bldg. Corp.* v. *Aureguy* (1953) 41 Cal.2d 521, 523 [261 P.2d 249]; *Bank of America etc. Assn.* v. *Pendergrass* (1935) 4

Cal.2d 258, 263 [48 P.2d 659]; *Bank of America* v. *Lamb Finance Co.* (1960) 179 Cal.App.2d 498, 502 [3 Cal.Rptr. 877].)

Retired Justice Jefferson's evaluation of *Coast Bank's* treatment of *Masterson* led him to a parallel conclusion: "In Illustration (2) (modelled on *Coast Bank*) the note called for payment one year from its date. The proffered oral agreement of no payment at all, required on the happening of a condition subsequent, contradicts an *express* term of the note. The *Coast Bank* court is correct in holding that the *Masterson* formula for determining whether the parties have made their writing an integration was not intended to abolish the parol evidence rule by permitting proof of an oral agreement that contradicts an *express* term of a written instrument." (Jefferson, Cal. Evidence Benchbook (1972) p. 572.) (Italics in original.) See also 1978 supplement, stating that "[t]he *Masterson* principle is that extrinsic evidence of a prior or contemporaneous oral or written agreement that is *collateral* or *additional*" to an express written provision is admissible, but that "*Masterson* is generally not considered as holding that the parol evidence rule will permit proof of a prior or contemporaneous collateral term that *contradicts* an express term of a written instrument" (*ibid.*, pp. 381, 383). (Italics added; *Mobile Oil Corp.* v. *Handley* (1978) 76 Cal.App.3d 956, 961 [143 Cal.Rptr. 321] (collateral term cannot "flatly contradict the writing"); *Glendale Fed. Sav. & Loan Assn.* v. *Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101 [135 Cal.Rptr. 802].)

The facts in the instant case are distinguishable from those in *Sapin* and *Coast Bank*. Here appellants claim the existence of a nonintegrated agreement that the note in question would be repaid in effect by a new note containing fixed installments of principal. Such a new note has long been held sufficient consideration for the discharge of an unpaid prior note. (*Pauly* v. *Murray* (1895) 110 Cal. 13 [42 P. 313].) Such contention as to manner of payment does not contradict the face of the note as did the contentions in *Sapin* and *Coast Bank* that no payment at all was to be made.

In interpreting *Masterson*, Jefferson says (Benchbook, p. 569): "When one party to a written instrument is claiming an integration and the other is disavowing it, what test is the trial judge to apply to determine the question of integration, in order to rule whether the parol evidence rule is applicable?"

He goes on to state that the "face of the document" test has been turned away by the California Supreme Court and adds that: "*Masterson* follows an underlying theory that evidence of oral collateral agreements should not be excluded if there is no real danger that the trier of fact is likely to be misled."

The rejected evidence in this case appears to be squarely within the twin-pronged test established in *Masterson.* The first test is whether the proposed collateral agreement is the kind that might naturally be made by a separate agreement by the parties situated as were those parties to the written agreement. Here a bank was loaning defendants $40,000 to set up a new used car business and, if the declaration of DiTomaso is to be believed, it would be entirely appropriate to have the future payment terms contained in a separate agreement.

The second test considers whether the additional or collateral agreement is the type that would certainly have been included in the written instrument. Again, if the DiTomaso declaration is credible, the making of such agreement would be appropriately left to the bank's records by custom and practice. Such loan agreements when made by banks could possibly impair the negotiability of notes if the existence of such agreement was disclosed in the note itself.

The proffered evidence in this case—a document from the records of the plaintiff bank and a declaration by a former board chairman of the bank who was the loan officer in the instant transaction—can hardly be said to be such evidence as would be "likely to mislead a jury."

Respondent's evidentiary objections are neither appropriate nor timely since they were not raised in the trial court below.

Because the matter must be returned for trial it is not necessary for us to reach the question as to the proper allowance of attorney's fees.

The judgment is reversed.

Files, P. J., and Woods, J., concurred

A petition for a rehearing was denied February 11, 1982.