[No. B002784. Second Dist., Div. Five. Oct. 16, 1984.]

NANCY ZIMMERMAN, Plaintiff and Appellant, v.
HOLLIE STOTTER, Defendant and Respondent.

**COUNSEL**

D. Stephen Clare for Plaintiff and Appellant.

Eric J. Emanuel, Cheryl White Mason, Alan Seltzer and Ann Haskins as Amici Curiae on behalf of Plaintiff and Appellant.

Hartman, Hosp, Richard & Schlegel and J. Phillip Moorhead for Defendant and Respondent.

**OPINION**

**STEPHENS, Acting P. J.**—Plaintiff Nancy Zimmerman (hereinafter appellant) appeals from an order entering summary judgment in favor of defendant Hollie Stotter (hereinafter respondent). Of principal concern is whether triable issues of fact exist in a dispute arising out of a judgment of unlawful detainer and subsequent satisfaction of that judgment, or whether the merits of appellant's contentions were completely barred from additional contestation by the doctrines of res judicata/collateral estoppel.

In 1977, appellant took occupancy of one-half of a duplex[1] located in the community of Venice pursuant to an oral rental agreement with the then owner of the property (respondent's predecessor). In the summer of 1980, respondent purchased the subject property for $175,000. The purchase had been arranged by codefendant Fred Sands Realtors.

In August 1980, appellant received from respondent a 30-day notice to quit the aforementioned premises. In pertinent part, the purported purpose of the notice to quit was for the new owner to remove the property from the rental market.[2] While appellant remained in possession, respondent filed declarations with the Rent Stabilization Unit of the Community Development Department of the City of Los Angeles declaring that she sought possession of the duplex for use by her mother in one unit and her son in the other.

Appellant, acting in propria persona, answered the complaint for unlawful detainer and requested a jury trial.[3] At trial, respondent testified that she intended to permanently remove both apartments from the rental market so that the two apartments could be occupied by her mother and son. Appellant's attempt to testify about the prior notices of termination of the tenancy and their communications with respondent's real estate agent Bernard were denied on grounds of relevancy and hearsay, respectively.

On February 6, 1981, the jury reached its verdict in favor of respondent and against appellant.[4] On February 11, appellant retained counsel. Two days later, on February 13, counsel filed with the municipal court substitutions of attorney, notices of appeal, and notice of motion and motion to stay execution of judgment scheduled to be heard on February 24, 1981, pending appeal. That same day, however, respondent caused a writ of execution for possession of the premises to be issued. Appellant was served with a notice to vacate not later than February 23, 1981. On February 19, appellant made an ex parte application for an order staying execution of the judgment. That motion was denied. Appellant vacated said premises shortly thereafter.

---

[1]Plaintiff Brossard, the occupant of the other half of the duplex since 1972, does not appear as a party to this appeal.

[2]Appellant stated that she did not believe the statement because other notices of termination had been received which alleged that the apartment was needed for other reasons. Furthermore, respondent allegedly orally advised appellant that she needed the apartments for remodeling. Additionally, defendant Bernard, respondent's real estate agent and an employee of Fred Sands, allegedly advised appellant that she may be able to stay if she was willing to pay higher rent.

[3]Appellant's jury trial was consolidated with Brossard's jury trial.

[4]The jury was deadlocked in plaintiff Brossard's case. The court, however, entered judgment on its own motion for respondent Stotter and against Brossard. That order was eventually reversed on appeal.

Some two months later, in late April 1981, two women moved into the respective units. Each moved in pursuant to separate but identical agreements to act as caretakers of the property in return for no rent being owed. In May 1981, respondent then entered into a listing agreement with codefendant Fred Sands Realty to sell the property. A selling price of $240,000 was sought, which was $65,000 more than respondent had paid less than a year prior to that time.

On June 24, 1981, appellant, as coplaintiff, filed the instant action against respondent, alleging that her eviction was wrongful, malicious and in bad faith, an abuse of process, and in contravention of the rent stabilization ordinance. It was also alleged that the eviction resulted in an intentional infliction of emotional distress as well as a violation of the Unruh Civil Rights Act. Appellant sought damages, restoration of her apartment, and an injunction against further interference with the quiet enjoyment of her tenancy. Respondent answered, denying most of the allegations.

On June 26, 1981, appellant's appeal of the unlawful detainer judgment originally filed with the municipal court was transferred to the appellate department of the superior court. In February of 1982, a Fred Sands Realty "For Lease" sign was posted on the property. The caretaker-tenants moved out soon thereafter.

On March 15, 1982, more than one year after the writ of possession was enforced, the superior court appellate department affirmed the judgment against appellant in the unlawful detainer action. Two days later, respondent entered into a one-year lease with Paul and Heidi Williams to rent one side of the duplex at a rental rate of $275 more per month than what appellant had paid at the time she was evicted.

In April 1983, respondent filed a motion for summary judgment against appellant in the present action. It was asserted that appellant's complaint lacked merit as a result of the prior municipal court action between the two on the same cause in which judgment was entered in favor of respondent. Thus, it was argued that the present action was barred by the doctrine of res judicata. Support of the motion was limited to the declaration of respondent's attorney, Richard Schlegel. In opposition, appellant countered with her own declaration reciting facts as noted earlier in this opinion, i.e., that events subsequent to the entry of judgment raised a triable issue of fact. The court, however, granted summary judgment in favor of respondent. It found that had respondent obtained possession by fraud, and likewise had used fraud as a device to wrongfully increase the rent, the city and not appellant had the power to deal with these frauds. Finally, the court indicated that "this case can't be used as a basis for determining whether the

jury verdict should be upheld against a claim that [respondent] lied to the jury." This appeal followed.

Appellant initially contends that the doctrine of res judicata may only be applied to bar litigation of issues which could have been raised in the prior action. Her complaint alleged wrongful conduct by respondent *after* judgment was entered in that case. Alternatively, it is argued that should the prior judgment establish conclusively that respondent was acting in good faith for an authorized purpose up until the time judgment was entered, that judgment does not establish that she was acting in good faith for any authorized purpose at the time she engaged the process of the court to evict appellant from her home. Appellant's second premise is merely that the doctrine of res judicata should not be mechanically applied to deny the litigants substantial justice and defeat important considerations of public policy. Respondent contends that appellant's complaint clearly seeks to relitigate the propriety of respondent's motives in her ouster of appellant.

■ Whenever one judgment is raised as a bar to a subsequent action under the doctrine of res judicata, the issue becomes whether the same cause of action is involved in both suits. We focus on the "primary right" at stake, that being, if the two actions involve the same injury to the plaintiff and the same wrong by the defendant. The fact that the second action involves the pleading of different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery is immaterial. (*Eichman* v. *Fotomat Corp.* (1983) 147 Cal.App.3d 1170, 1174 [197 Cal.Rptr. 612].) ■ Underlying this policy of barring subsequent litigation on a previously tried and finalized issue is the consideration of seeking the most reasonably efficient and economic use of judicial resources as well as the desire to promote peace and tranquillity in the minds of those who might otherwise suffer with the fear of constantly recurring litigation. (*De Weese* v. *Unick* (1980) 102 Cal.App.3d 100, 105 [162 Cal.Rptr. 259].) ■ However, this doctrine is not without certain legal limitations encompassing situations in which justice would be circumvented. This is especially true where the judgment is conditional or where the claim sought to be asserted in the second action encompasses activities not directly connected with the original action. In such a case, application of collateral estoppel or res judicata, at best, is unclear. (*Vella* v. *Hudgins* (1977) 20 Cal.3d 251, 256 [142 Cal.Rptr. 414, 572 P.2d 28].)

■ The primary purpose of the unlawful detainer action is to further one party's right to possession in situations specified by statute. (*Vasey* v. *California Dance Co.* (1977) 70 Cal.App.3d 742, 746 [139 Cal.Rptr. 72].) Yet the purpose remains procedural. The landlord's property rights are statutorily implemented by permitting him or her to recover possession once

the consensual basis for the tenant's occupancy is at an end. (*People* v. *Little* (1983) 143 Cal.App.3d Supp. 14, 18 [192 Cal.Rptr. 619].) Accordingly, all rights of the respective parties concerning any ouster arise from and must comport with the applicable provisions and restrictions of the rent stabilization ordinance.

Section 151.09, subparagraph A of the rent stabilization ordinance states that "A landlord may bring an action to recover possession of a rental unit only *upon one of the following grounds*:

"8. The landlord, seeks *in good faith* to recover possession of the rental unit for use and occupancy by the landlord, or the landlord's spouse, children, or parents . . .,

"10. The landlord seeks *in good faith* to recover possession in order to remove the rental unit *permanently* from rental housing use." (Italics added.)

 In order to comply with the requirements of Los Angeles Rent Stabilization Ordinance section 151.09, respondent filed a declaration with the rent stabilization unit which indicated that she was seeking possession of the duplex for use by her son and mother. Based upon that declaration, the matter of respondent's right to possession was submitted by respondent, countered by appellant and determined by the trier of fact.

Appellant may not now relitigate this same primary right (the right to possession) which was necessarily determined in the unlawful detainer judgment. (See *Eichman* v. *Fotomat Corp.*, *supra,* 147 Cal.App.3d at p. 1174.) The conclusiveness of respondent's *right to possession* for the declared purpose stated in order to comply with the rent stabilization ordinance was unequivocally determined by a jury and affirmed on appeal in respondent's favor. Consequently, appellant's request for restitution and her stated cause of action for violations of the Unruh Civil Rights Act, Civil Code section 51 et seq. (discrimination), which should have been raised as an affirmative defense to respondent's claim of possession in the earlier unlawful detainer action (cf. *Abstract Investment Co.* v. *Hutchinson* (1962) 204 Cal.App.2d 242, 247 [22 Cal.Rptr. 309]), is barred from additional contestation by the doctrine of res judicata. By the same token, however, appellant's remaining causes of action, for wrongful eviction,[5] abuse of process, and intentional

---

[5]In fact, there is no such cause of action as unlawful, malicious or wrongful eviction. Where an eviction arises from the wrongful use of judicial processes, the cause of action is one for malicious prosecution. (*Gause* v. *McClelland* (1951) 102 Cal.App.2d 762, 764 [228 P.2d 91].) While these two causes of action differ (*Weisenburg* v. *Molina* (1976) 58 Cal.App.3d 478, 488 [129 Cal.Rptr. 813]), the element of intent and good faith remains the same.

infliction of emotional distress, which relate to respondent's action pursuant to the issuance of the writ of possession, are not barred from relitigation. It is not the right, but the abuse of that right, which appellant seeks to litigate. Thus, the primary right at stake, while tangentially related, remains distinct from that of the right of possession adjudicated in the unlawful detainer proceeding.

 Since res judicata acts as a bar to a portion of appellant's action (Unruh violation), we address the question of whether the remainder of appellant's action is effectively barred from litigation by collateral estoppel.

 Similar to the doctrine of res judicata, collateral estoppel bars relitigation of an issue if that issue, decided at a previous proceeding, is identical to the one which is sought to be relitigated; if the previous proceeding concluded in a final judgment on the merits, and if the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior proceeding. (*People* v. *Sims* (1982) 32 Cal.3d 468, 484 [186 Cal.Rptr. 77, 651 P.2d 321].)

 Appellant's remaining causes of action include an action for abuse of process, wrongful eviction and intentional infliction of emotional distress. Each contain as elements within their respective definitions the crucial issue of intent, motive or good faith.

In the prior unlawful detainer action, the issue of respondent's good faith intention of seeking possession was properly raised for a fair hearing before a jury. The controversy was submitted to the jury for a determination on the merits. The jury found that respondent had indeed sought possession in good faith. Thus, it is clear that respondent's good faith in seeking possession was actually litigated in the unlawful detainer action.

In the instant action, the primary issue in controversy again is respondent's motive, intent and/or good faith in obtaining a writ of possession for purposes of satisfying her judgment.[6]

---

[6]There is no question that respondent sought the proper procedure for satisfying her judgment.

Code of Civil Procedure section 712.010 states in pertinent part: "After entry of a judgment for possession or sale of property, a writ of possession or sale shall be issued by the clerk of the court upon application of the judgment creditor and shall be directed to the levying officer in the county where the judgment is to be enforced. . . . Writs may be issued successively until the judgment is satisfied, . . . ."

Section 715.010, subdivision (a) states that "A judgment for possession of real property may be enforced by .a writ of possession of real property issued pursuant to Section 712.010." Use of the writ of possession by respondent properly authorized the seizure and appropriation of her property from appellant to satisfy her existing judgment. (Cal. Civil Writs (Cont.Ed.Bar 1970) § 3.14, p. 27.)

Initially, the issue of respondent's motive, intent and good faith, as in our earlier discussion concerning res judicata, appears barred from relitigation. As noted earlier, judgment entered in favor of respondent as of February 6 conclusively decided respondent's good faith intent up to and including the date of entry of that judgment. Furthermore, a presumption, albeit rebuttable, remains that in satisfying that judgment, respondent continues to act in accordance with the same intent in which judgment was sought and awarded. However, because of the conditional nature of this type of judgment,[7] respondent's intent, motive and good faith *after* judgment is merely a rebuttable presumption, and has not been conclusively litigated. Accordingly, and contrary to respondent's contention, a distinction lies in the respective time periods between the time of respondent's seeking her unlawful detainer judgment, up to and including judgment, and the period of time after entry of judgment.

Respondent's conduct as it relates to the present action, and the intent and good faith that accompanied that conduct, reflect occurrences that are alleged to have resulted *after* judgment was entered. There is a logical separation between the two time periods and the two actions. The alleged wrong was not done to appellant by entry of the unlawful detainer judgment itself. The wrong allegedly resulted when, by the use of the writ of possession, respondent evicted appellant from her apartment not for the purpose of occupying the premises as declared by her earlier, but for an ulterior purpose in circumvention of the applicable rent control regulations. (See *Tranchina* v. *Arcinas* (1947) 78 Cal.App.2d 522, 524-525 [178 P.2d 65].) Resultingly, for purposes of adjudicating these limited causes of action, the issue of respondent's good faith intent or motive in causing the issuance of a writ of possession has not been conclusively adjudicated in the unlawful detainer action. We conclude that this issue cannot reasonably be said to be identical to that which was litigated and determined in the unlawful detainer proceeding. (See *Eichler Homes, Inc.* v. *Anderson* (1970) 9 Cal.App.3d 224, 234 [87 Cal.Rptr. 893].) Thus, the granting of summary judgment upon res judicata/collateral estoppel grounds, excepting that cause of action based upon violations of the Unruh Civil Rights Act, was improper.[8] Nevertheless, while reversal on this fact alone appears warranted, on an appeal from a summary judgment, the appellate court retains the duty of determin-

---

[7]The judgment is inferentially conditioned as a result of the necessity of compliance with the spirit and terms of the applicable rent stabilization ordinance. This is because compliance with the ordinance is premised on the good faith intentions of the parties, and the declared good faith of the parties may only become known as a result of subsequent happenings.

[8]The other ground stated for dismissal by the court was based upon its conclusion that no cause of action, other than that retained by the municipality itself, was in existence. Section 151.10, subparagraph A merely sets forth the prevailing criminal penalties and does not preclude or limit *all* incidental private causes of action.

ing whether or not a triable issue of material fact, in fact, exists.[9] (*Scott* v. *Farrar* (1983) 139 Cal.App.3d 462, 466 [188 Cal.Rptr. 823].)

■ A motion for summary judgment is appropriate only where no triable issue of material fact exists and where the moving party's affidavits set forth sufficient facts to sustain a judgment in its favor. (*Bank of Beverly Hills* v. *Catain* (1982) 128 Cal.App.3d 28, 33 [180 Cal.Rptr. 67].) ■ A defendant moving for summary judgment maintains the burden of establishing the lack of merit of plaintiff's action. Therefore, a factual showing negating the existence of a cause of action on all theories embodied in the complaint is required. Failure in that burden requires the denial of the motion for summary judgment despite any deficiencies in the plaintiff's responding declaration.[10] (*Clendening* v. *Shipton* (1983) 149 Cal.App.3d 191, 195-196 [196 Cal.Rptr. 654]; *Kelleher* v. *Empresa Hondurena de Vapores, S.A.* (1976) 57 Cal.App.3d 52, 58 [129 Cal.Rptr. 32].)

As we understand appellant's argument, respondent's election to satisfy her judgment by causing the sheriff to physically oust her from possession of the premises was in contravention of section 151.09 of the Los Angeles Rent Stabilization Ordinance as well as contrary to good morals. As noted earlier, section 151.09, subparagraph A provides in pertinent part for a landlord to recover possession of a rental unit *only* upon one of the following grounds:

"8. The landlord seeks in *good faith* to recover possession of the rental unit for use and occupancy by the landlord, or the landlord's spouse, children, or parents . . .,

"10. The landlord seeks in *good faith* to recover possession in order to remove the rental unit *permanently* from rental housing use." (Italics added.)[11]

---

[9]Appellant's entire argument is couched in terms of whether or not she has stated "a cause of action," not as to whether triable issues of material fact exist.

[10]Clearly, respondent's declarations in support of the issuance of summary judgment were based exclusively upon the establishment of res judicata. Since the doctrine of res judicata is only of limited effect in the instant action, respondent has facially failed to negate the existence of a cause of action on all remaining theories embodied in the complaint.

[11]It could be argued that any cause of action for violation of rent control would be legally irrelevant. The rent stabilization ordinance contains no prohibition or regulation of a landlord's conduct *after* the tenant has been evicted. Furthermore, it provides no remedy to a former tenant, either for restoration of possession or damages. Section 151.10, subparagraph B, provides that "Any person who willfully or knowingly with intent to deceive makes a false statement or representation, or knowingly fails to disclose a material fact . . . shall be guilty of a misdemeanor [punishable by a fine of not more than $500 or by imprisonment in the county jail for not more than six months or both.]" The only private remedy specifically authorized by the ordinance is one in which if the landlord demands, accepts or retains excessive rent, the tenant may then bring an action for treble the excess. (§ 151.10, subpar. A.) However, we believe the Legislature did not intend to create a blanket preclusion of all possible remedies.

At least two issues of material fact appear to be evident. First, respondent's intent, motive and good faith in satisfying her judgment is a material fact at issue to determine whether she sought to use a valid judgment for an ulterior and thus unlawful purpose. The second issue of material fact concerns the question regarding what period of time after judgment is entered a landlord can consciously refuse to conform with the declared intention for which the judgment was sought and entered, and not be faced with this type of lawsuit.

Respecting the first issue of material fact, it is the obligation of one seeking possession of a controlled rental unit to act in good faith for the purposes set forth by the ordinance. That good faith must continue not only after judgment and up to the time that possession actually results, but a reasonable time thereafter. A contrary determination circumvents and defeats the purpose for which the rent stabilization ordinance was adopted, that being, to reduce the rate of rent increases in the city, along with the concomitant hardships and displacements, while providing landlords with a just and reasonable return from their rental. (§ 151.01; see also *People* v. *Little, supra,* 143 Cal.App.3d Supp. at p. 19.) Furthermore, without that continued good intention, such actions improperly expand section 151.09 by implicitly increasing the limited grounds provided by which a landlord may regain possession. More specifically, section 151.09, subparagraph B, which precludes a landlord from recovering possession or causing the tenant to quit involuntarily when that landlord's dominant intent is premised upon retaliation against the tenant, would be difficult to prove, absent a dispossessed tenant's right to show inconsistent conduct on the part of the landlord. While respondent's motives, intentions or good faith remain conclusively determined up to and including entry of judgment and thus cannot be relitigated, whether or not respondent maintained in good faith her declared reasons for seeking possession can only be decided in light of the landlord's subsequent conduct.

In the instant matter, judgment was entered on February 6, 1981, granting respondent the right to possession of her duplex. On February 13, respondent caused a writ of execution for possession of the premises to be issued. Some two months later, two women, not related to respondent, moved into the unit, ostensibly for the purpose of acting as caretakers. Approximately one month later, in May of 1981, respondent placed the property on the seller's market. On June 24, 1981, appellant filed her lawsuit for abuse of process, inter alia. In February 1982, a "For Lease" sign was posted on the property and the two caretakers vacated the premises. On March 15, 1982, the judgment of unlawful detainer was affirmed. Two days later, respondent entered into a one-year lease with new tenants for a rental rate

of $275 more per month than appellant was paying at the time she was evicted.

At first glance, the initial incident of "questionable" conduct occurred in February 1982, when respondent placed a "For Lease" sign on the property.[12] That occurred some eight months after appellant filed her own separate action and nearly one year after judgment in the unlawful detainer action and execution on that judgment. The next significant act of "bad faith" conduct resulted two days after affirmance of the unlawful detainer judgment by the appellate department of the superior court, and more than one year after entry of judgment and execution.

It is evident from the facts that neither respondent's son nor mother have occupied the premises, nor that the duplex was permanently excluded from the rental market, as respondent stated in her declaration in support of her requested judgment for possession. It is equally clear that the subject property had been taken off the rental market for nearly one year before being placed back on the rental market at a substantially higher rate of rent. It takes little or no imagination to conclude the obvious: that the purpose for seeking possession pursuant to section 151.09, subparagraphs 8 and 10, has not materialized. Thus, the obvious question of "why not" is relevant, assuming those stated facts which gave rise to the landlord's alleged cause of action occurred within a reasonable period of time from the date of the alleged abuse. We are mindful that there remains some point in time, for whatever valid reason, a landlord can lawfully return former rental property to the rental market. Rent control ordinances were not intended to preclude a landlord/landowner from ever returning former rental property to the rental market.

When, then, can a landlord, for valid reasons, such as determining in good faith that it is not feasible to carry out his or her originally declared intentions for removing the property from the rental market, return the former rental property to the rental market? The answer to this question is, within a reasonable time.

In the present action, respondent excluded the property from the rental market for approximately one year. Residency by paying tenants did not occur until over one year from the date respondent took possession. We believe that an approximate time span of one year from the date of receipt of possession, depending on the given facts, probably represents a reason-

---

[12]In our opinion, the prior residency of the two caretakers, as long as that residency was without rent being paid, does not constitute sufficient evidence of bad faith. Similarly, an attempted sale of rental property is neither precluded by rent control nor evidence in and of itself of bad faith.

able time for a landlord to wait before he places said property back onto the rental market.[13] Consequently, appellant's instant action is tenuous at best. However, the final resolution of this question, with this time period in mind, is best reserved for the trier of fact based upon a case-by-case review. Thus, issues of respondent's good faith, motive and intent remain triable issues of material fact. Accordingly, the order granting summary judgment is reversed. Appellant to recover costs.

Ashby, J., and Hastings, J., concurred.

---

[13]We are cognizant of the fact that section 151.09, subparagraph 10, calls for the *permanent* removal of the rental housing unit from the market. However, the literal meaning may be disregarded in order to avoid an unrealistic result. (*Sinnamon* v. *McKay* (1983) 142 Cal.App.3d 847, 852 [191 Cal.Rptr. 295].)