**David MCALISTER et al., Plaintiffs,**

v.

**ESSEX PROPERTY TRUST et al., Defendants.**

**No. CV070240SJOSHX.**

United States District Court, C.D. California.

Aug. 24, 2007.

Connie Y. Chung, Liam J. Garland, Nisha N. Vyas, Southern California Housing Rights Center, Los Angeles, CA, for Plaintiffs.

Thomas B. Cummings, Thomas B. Cummings Law Offices, Anaheim, CA, for Defendants.

ORDER GRANTING IN PART AND DENYING IN PART PARTIAL SUMMARY ADJUDICATION ON THE ISSUE OF REASONABLE ACCOMMODATION

OTERO, District Judge.

This matter is before the Court on Plaintiffs' Motion for Summary Adjudication, filed May 14, 2007. Defendants filed an Opposition, to which Plaintiffs replied. Pursuant to Federal Rule of Civil Procedure 78 and Local Rule 7–15, the Court found this matter suitable for disposition without oral argument and vacated the hearing set for June 4, 2007. For the following reasons, Plaintiffs' Motion for Summary Adjudication is GRANTED IN PART and DENIED IN PART.

I. *BACKGROUND*

Since September of 2002, Plaintiff David McAlister, his minor son, and sometimes his minor daughter have lived at 741 Paseo Camarillo, Unit # 89, Camarillo, California, part of a community referred to as "Camarillo Oaks." *ESSEX MGMT. CORP. v. McALISTER,* No. 245572, at 2007 WL 811093, *1 (Cal.Sup.Ct. Feb. 14, 2007) [hereinafter *McALISTER* Ruling]. During the summer and early autumn of 2006, neighbors complained that the McAlister family sloud and disruptive behavior made them feel threatened. *Id.* at *2. Mr. McAlister has since sent his daughter to live at a residential treatment facility, but not before a disturbance in late September of 2006. *Id.* at *2–3. This disturbance prompted Essex Management Corporation ("Management") to serve Mr. McAlister with notice to terminate his tenancy. *Id.* at *2.

Mr. McAlister requested withdrawal of the notice of eviction as a reasonable accommodation of both his son's and his own disabilities under the Federal Fair Housing Amendments Act of 1988 ("FHAA"). *Id.* In a letter to the property manager, a case analyst at the Housing Rights Center identified Mr. McAlister as a person with a disability and requested withdrawal as a reasonable accommodation. (Arriola Decl. Ex. H.) In a letter to Management's attorney, Mr. McAlister's attorney asked for withdrawal as a reasonable accommodation of the son's disability, explaining that unless the son continues to live within a qualifying area, he cannot receive necessary mental health services provided by the city. (Duringer Decl. Ex. N.)

On December 28, 2006, Management, acting as authorized agent, sued Mr. McAlister in the Superior Court of California for unlawful detainer (the "UD Action") relating to the apartment. Mr. McAlister raised as an affirmative defense reasonable accommodation of both his and his son's disabilities. Commissioner Mark S. Borrell issued a ten-page ruling in favor of Mr. McAlister. *See McALISTER* Ruling. In the ruling, the Commissioner found that rescission of the termination notice would not be a reasonable accommodation of Mr. McAlister's personal disability. *Id.* at *6 n. 4. However, the Commissioner found that rescission was a reasonable accommodation of the son's disability and therefore allowed the McAlister family to retain tenancy of their apartment: "The resolution of this unlawful detalner case turns on whether [Management] lawfully refused to provide the accommodation requested by McAlister[;] .... the court determines that it did not." *Id.* at *4. At the Commissioner's request, Mr. McAlister's attorney drafted a judgment. *Id.* at *10; *See Essex Mgmt. Corp. v. McAlister,* No. 245572, at 1 (Cal.Sup.Ct. Mar. 12, 2007) [hereinafter *McAlister* Judgment]. The Commissioner filed the proposed judgment, but not before he struck out the only sentence referencing reasonable accommodation: "Finding this case turned on whether [Management] lawfully refused to provide

Mr. McAllister's [*sic*] request for accommodation pursuant to federal and state fair housing laws, this Court held that Essex unlawfully refused Mr. McAlister's request for accommodation." *McAlister Judgment*, at 1.

On January 9, 2007, Mr. McAlister and the Housing Rights Center (collectively, "Plaintiffs") initiated this action against Essex Property Trust ("Property Trust"), Essex Portfolio ("Portfolio"), Essex Camarillo Oaks 789 ("Camarillo 789"), and Management (collectively, "Defendants") for failure to provide reasonable accommodation of his and his children's disabilities under federal and state fair housing laws.

## II. *DISCUSSION*

### A. *Plaintiffs Seek Summary Adjudication Based on Collateral Estoppel Regarding the Issue of Reasonable Accommodation*

 Plaintiffs seek summary adjudication on the issue of Defendants' liability under federal and state fair housing law. Plaintiffs assert that the issue of reasonable accommodation was decided in favor of the McAlister family during the UD Action and that Defendants should be collaterally estopped from relitigating it. Where an issue has been actually litigated and was necessary to the judgment in a prior litigation between the same parties or their privies, collateral estoppel prevents that issue from being relitigated. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). The objective of collateral estoppel, and of res judicata in general, is to cut down on expense to and effort by litigants and courts by eliminating redundant litigation. *Wood v. Herson*, 39 Cal.App.3d 737, 114 Cal.Rptr. 365, 369 (Ct.App.1974); 7 Witkin, California Procedure, *Judgment* §§ 280, 354 (4th ed.1997).

### 1. *An Unlawful Detainer Judgment May Have Collateral Estoppel Effects on Issues That Were Properly Raised.*

 Defendants assert that "an unlawful detainer proceeding is not a basis for [collateral estoppel] as it is summary in nature." (Opp'n 16.) It is true that an unlawful detainer action is summary in the sense that "only claims bearing directly upon the right of immediate possession are cognizable." *Vella v. Hudgins*, 20 Cal.3d 251, 142 Cal.Rptr. 414, 572 P.2d 28, 30 (1977). Claims extrinsic to the right of immediate possession cannot be raised in an unlawful detainer action. *Id.* But issues necessary to resolve the right of immediate possession, such as the affirmative defense of reasonable accommodation, may be raised and conclusively resolved in an unlawful detainer action. *See Wood*, 114 Cal.Rptr. at 369 ("[A] party *can* have a full adversary hearing in an unlawful detainer action where all issues involved in a subsequent proceeding are determined.") (emphasis in original). The potential of an unlawful detainer judgment to collaterally estop subsequent litigation has been recognized by the California Supreme Court: "Applying the traditional rule that a judgment rendered by a court of competent jurisdiction is conclusive to any issues necessarily determined in that action, the courts have held that subsequent [suits] are barred by the prior unlawful detainer judgment." *Vella*, 142 Cal.Rptr. 414, 572 P.2d at 31.

 Here, the summary nature of unlawful detainer actions does not bar Plaintiffs' assertion of collateral estoppel because Mr. McAlister's claim of reasonable accommodation *was* heard. In fact, because the parties had narrowed the issues through the use of stipulations regarding facts and exhibits, reasonable accommodation was the sole issue before the Commis-

sioner. (Statement of Genuine Issues in Opp'n ¶ 15.)

### 2. *The Issue of Reasonable Accommodation Was Fully and Fairly Litigated.*

 Only full and fair litigation of an issue can bring about collateral estoppel. *Vella,* 142 Cal.Rptr. 414, 572 P.2d at 31 (" '[F]ull and fair' litigation of an affirmative defense . . . will result in a judgment conclusive upon issues material to that defense."). If the issue of reasonable accommodation was fully and fairly litigated in the UD Action, the resulting judgment can have collateral estoppel force.

Defendants argue that the UD Action was too brief to produce collateral estoppel, but the short length of the action does not preclude the conclusion that the issue of reasonable accommodation was fully and fairly litigated. Although testimony at trial lasted only four hours, Defendants do not specify any evidence that they lacked opportunity to introduce. At trial, Management called five of the eight witnesses who testified. (Statement of Genuine Issues in Opp'n ¶ 17.) The motion for summary judgment that Management filed, *id.* ¶ 12, was another opportunity to be heard by the Commissioner. Management had an opportunity to present its case on the issue of reasonable accommodation, the sole issue to be tried. As Plaintiffs relate, the Commissioner offered his opinion during trial that the parties were "very effectively represented by their respective counsel," that counsel was "competent [and] well-prepared," and that the case was "very well tried." (Garland Reply Decl. ¶ 3.)

### a. *The UD Action Provided Management with an Opportunity to Litigate All Issues Regarding Reasonable Accommodation.*

The most persuasive evidence of the fullness and fairness of the litigation are the attacks Defendants wage on the validity of Mr. McAlister's request for a reasonable accommodation. Defendants argue that, given the opportunity, they would show that Mr. McAlister's son did not qualify as disabled and that his son did not require a reasonable accommodation because he was posing a "direct threat" to the health and safety of others, an exception to the duty to provide reasonable accommodations. (Opp'n 8–9.) Yet, Commissioner Borrell addressed both of these issues *McAlister Ruling,* at 6 ("The evidence establishes that McAlister is a person qualifying for protection under the FHAA, either as a person with a disability or as someone associated with a person with a disability."), 10 ("Essex has not met its burden to show that McAlister [or] his son are, at this time, a 'direct threat' to other residents . . . ."). Essentially, Defendants are asking for another chance to litigate because they feel Commissioner Borrell's ruling was incorrect, an argument they waived by failing to file an appeal. Whether the Commissioner correctly adjudicated the merits has no bearing on whether Management had a full and fair opportunity to litigate the merits.

### b. *Parties to an Unlawful Detainer Action Do Not Need to Waive Speedy Resolution for the Action to Have Collateral Estoppel Effect.*

 Defendants also argue that no unlawful detainer action has preclusive effect unless the parties waive speed in favor of thoroughness. (Opp'n 15 (citing *Vella,* 142 Cal.Rptr. 414, 572 P.2d at 31 ("[T]he parties apparently chose to waive speedy resolution of the issue of possession in favor of an extensive adjudication of their conflicting claims by a superior court invested with jurisdiction to deal with any issues the disputants agreed to try")).) According to Defendants, because they did not waive speedy resolution of the issues in the

UD Action, they did not have a full and fair opportunity for trial.

This argument is unsuccessful for two reasons. First, *Vella*'s waiver language concerned a claim that is "not ordinarily cognizable in unlawful detainer" actions. 142 Cal.Rptr. 414, 572 P.2d at 31. *Zimmerman v. Stotter*, like this case, addressed a claim that can properly be raised in an unlawful detainer action. 160 Cal.App.3d 1067, 207 Cal.Rptr. 108 (1984). In *Zimmerman*, the sole issue in the unlawful detainer action was whether the landlord had acted in good faith. *Id.* at 1074, 207 Cal.Rptr. 108. The landlord prevailed. *Id.* at 1071, 207 Cal.Rptr. 108. In subsequent proceedings, the tenant was barred from questioning the landlord's good faith during the time period that was at issue in the unlawful detainer action. *Id.* ("Appellant may not now relitigate this same primary right (the right to possession) which was necessarily determined in the unlawful detainer judgment.")

Second, even if waiver is necessary, Defendants have displayed their intent to waive speedy resolution. Apparently anticipating success in the UD Action, Defendants sought collateral estoppel based upon its pending result (Defs.' Answer 16.) By displaying their intent to be bound by the result of the UD Action, Defendants are estopped from later changing their position and challenging the preclusive effect of the UD Action. *See Poweragent Inc. v. Data Sys. Corp.*, 358 F.3d 1187, 1192 (9th Cir.2004).

**B.** *The UD Action Has Collateral Estoppel Effect as to Reasonable Accommodation.*

California law governs as to the collateral estoppel effect of the Commissioner's judgment because the UD Action was litigated in state court. *See* 28 U.S.C. § 1738 ("[Authenticated records and judicial proceedings of any court of any State] shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."); *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481–82, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) ("It has long been established that § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, [§ 1738] commands a federal court to accept the rules chosen by the State from which the judgment is taken."). Under California law, relitigation is collaterally estopped when "(1) the issue decided in a prior adjudication is identical with that presented in the action in question; and (2) there was a final judgment on the merits; and (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication." *Clemmer v. Hartford Ins. Co.*, 22 Cal.3d 865, 151 Cal.Rptr. 285, 587 P.2d 1098, 1101–02 (1978).

**1.** *Identical Issue of Reasonable Accommodation Was Litigated in UD Action.*

Collateral estoppel applies only when the issue in the current action is identical to the issue in the prior action and is necessary to the determination of that action. *Parklane*, 439 U.S. at 327 n. 5, 99 S.Ct. 645. Here the issue of reasonable accommodation was necessary to the judgment in favor of Mr. McAlister in the UD Action because Management had adequate grounds to evict Mr. McAlister in the absence of a meritorious affirmative defense, *McAlister* Ruling, at 4, and reasonable accommodation was the only affirmative defense raised (Reply 1).

a. *Commissioner Borrell's Ten–Page Ruling is Proof that Reasonable Accommodation Issue Was Litigated in the UD Action.*

To demonstrate that the issue decided in the UD Action is identical to the issue for which Plaintiffs seek summary adjudication in this action, Plaintiffs present Commissioner Borrell's ten-page ruling. In this ruling, the Commissioner applies the same burden-shifting standard of review that is applied to FHAA claims of housing discrimination and finds that Management "[un]lawfully refused to provide the accommodation requested by McAlister." *McAlister* Ruling, at 4, 6–10. Although the ruling is extrinsic to the final judgment, it may be used to ascertain what issues were determined in the prior action. *Southwell v. Mallery, Stern & Warford*, 194 Cal. App.3d 140, 239 Cal.Rptr. 371, 374 (Ct. App.1987); *Sartor v. Superior Court*, 136 Cal.App.3d 322, 187 Cal.Rptr. 247, 249 (Ct. App.1982); 7 Witkin, California Procedure, *Judgment* § 358 (4th ed.1997).

b. *Striking Out the Reasonable Accommodation Sentence of the Proposed Order Did Not Negate the Ten–Page Ruling.*

Based on the Commissioner's edit to the proposed judgment, Defendants assert that the ten-page ruling does not reveal the Commissioner's final judgment as to the issue of reasonable accommodation. It is true that a court retains the power to change its conclusion up until the judgment is filed. *Gideon v. Superior Court*, 141 Cal.App.2d 640, 297 P.2d 84 (1956). However, the Commissioner's edit to the proposed judgment does not demonstrate that he changed his conclusion as to the issue of reasonable accommodation. Because reasonable accommodation was the only affirmative defense that Mr. McAlister and his family raised during the UD Action (Reply 1), the Commissioner could not have awarded them possession if he had changed his conclusion as to that issue.

Furthermore, the sentence that the Commissioner struck out from the proposed judgment was vague as to which denial of accommodation violated the federal and state fair housing laws, Mr. McAlister's or his son's. In his ruling, the Commissioner found that rescission of the eviction notice was not necessary to accommodate Mr. McAlister's disability, but that it was necessary to accommodate his son's. Yet, the proposed sentence appeared to endorse Mr. McAlister's request for accommodation relating to his own back problems: "Finding this case turned on whether [Management] lawfully refused to provide Mr. McAllister's [*sic*] request for accommodation pursuant to federal and state fair housing laws, this Court held that [Management] unlawfully refused Mr. McAlister's request for accommodation." Striking out the proposed sentence is not inconsistent with the Commissioner's findings on reasonable accommodation contained within his ten-page ruling.

c. *Reasonable Accommodation Under FEHA, the Unruh Act. Section 17200, and Negligence Law Is Identical to Previously Litigated Issue.*

 Plaintiffs assert that Defendants are collaterally estopped from relitigating the issue of reasonable accommodation in defense of the state and common law claims as well as the FHAA claim. Defendants do not dispute Plaintiffs' assertion that a determination on the issue of reasonable accommodation under the FHAA is also dispositive of Plaintiffs' second claim under California's Fair Employment and Housing Act (FEHA) and third claim under the Unruh Civil Rights Act. These two acts contain statutory language equivalent to FHAA's reasonable accommodation provision. *Compare* Fair Housing

Amendment Acts of 1988, 42 U.S.C. § 3604(f)(3)(B) ("[Discrimination includes] a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling ...."), *with* Fair Employment and Housing Act, Cal. Govt.Code § 12927(c)(1) (" 'Discrimination' ... includes refusal to make reasonable accommodations in rules, policies, practices, or services when these accommodations may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling."), *and* Unruh Civil Rights Act, Cal. Civ.Code § 54.1(b)(3)(B) ("Any person renting, leasing, or otherwise providing real property for compensation shall not refuse to make reasonable accommodations in rules, policies, practices, or services, when those accommodations may be necessary to afford individuals with a disability equal opportunity to use and enjoy the premises.").

 Neither do Defendants dispute Plaintiffs' contention that failure to provide reasonable accommodation of a tenant's disability constitutes an act of "unfair competition" under California Business and Professions Code Section 17200. Plaintiffs draw a persuasive analogy between this action and *People v. McKale*, in which the California Supreme Court found that housing discrimination on the basis of religion and ancestry also constitutes unfair competition under Section 17200. 25 Cal.3d 626, 159 Cal.Rptr. 811, 602 P.2d 731, 737 (1979)

 Finally, Plaintiffs contend that breach of the duty to reasonably accommodate a tenant's disability, as imposed by the FHAA, renders Defendants liable for negligence. *See So. Cal. Hous. Rights Ctr. v. Los Feliz Towers Homeowners Ass'n,* 426 F.Supp.2d 1061, 1069 (2005) (finding that "[w]hether Defendants breached their duty depends on whether a reasonable ac-

commodation may have been necessary"). Defendants do not contest that failing to reasonably accommodate imposes derivative liability for negligence.

2. *Final Judgment on the Merits Was Issued.*

 Collateral estoppel applies only to issues which have been determined by a judgment that is both final and on the merits. *Grable v. Citizens Nat. Trust & Sav. Bank of Riverside,* 164 Cal.App.2d 710, 331 P.2d 103, 106 (1958). A judgment is not final while there is time to appeal or while an appeal is pending, *People v. Mitchell Bros. Santa Ana Theater,* 101 Cal.App.3d 296, 161 Cal.Rptr. 562, 568 (Ct. App.1980), and is not on the merits if based on a technical or formal defect, *Goddard v. Sec. Title Ins. & Guar. Co.,* 14 Cal.2d 47, 92 P.2d 804, 806–07 (1939). Defendants do not contest that a final judgment was entered in the UD Action and that the time for appeal has expired.

Defendants assert not that the unlawful detainer judgment did not reach the merits because of a technical or formal defect, but that evaluation of the merits was inaccurate. This Court is not in a position to second-guess the Commissioner's evaluation of the merits, only to note that he did reach them. Although Defendants argue that the merits of the reasonable accommodation issue should have been decided differently, the UD Action was decided on the merits.

3. *Management is Party to and Camarillo 789 Is in Privity with a Party to the Unlawful Detainer Action, But Plaintiffs Have Not Proven that Portfolio and Property Trust Were in Privity.*

 Collateral estoppel extends only to parties to the prior lawsuit and those in privity with them in relation to

that lawsuit. *Clemmer,* 151 Cal.Rptr. 285, 587 P.2d at 1101–02. Management is collaterally estopped from relitigating the issue of reasonable accommodation because Management was the plaintiff in the UD Action. The remaining question is which of the co-defendants were in privity with Management in relation to the prior action. Under California law, the court may find privity as a matter of law. *People v. Dawkins,* 241 Cal.Rptr. 456, 458 (Ct.App.1987) ("The existence of the relationship of privity is a question of law.").

Privity exists where the nonparty was closely related to the party in the prior action. *See Lynch v. Glass,* 44 Cal. App.3d 943, 119 Cal.Rptr. 139, 142 (Ct. App.1975). In addition, a nonparty's due process rights protect it from being bound by litigation in which its interest was not adequately represented or by which the nonparty could not reasonably have expected to be bound. *See id.* Plaintiffs assert that privity can be found and due process rights respected where (1) a nonparty had a proprietary or financial interest in and control of the prior action or (2) the unsuccessful party in the first action acted in a representative capacity for a nonparty. *See id.* at 143; *see also Southwest Airlines Co. v. Texas Intern. Airlines, Inc.,* 546 F.2d 84, 95 (5th Cir.1977) ("Federal courts have deemed [a non-party who controlled the original suit to be] 'sufficiently close' to justify preclusion.").

Camarillo 789 was in privity with Management in the prior action because Defendants admit that Camarillo 789 is an owner and operator of the subject property. (Statement of Genuine Issues in Opp'n ¶ 5). They also admit that Management acted as authorized agent during the prior action (Garland Decl. Ex. J) and that Management provides management services for Camarillo 789 at Camarillo Oaks (Statement of Genuine Issues in Opp'n ¶ 8).

However, summary judgment on the basis of collateral estoppel does not extend to Co–Defendants Property Trust and Portfolio because Plaintiffs have not marshaled enough evidence to determine as a matter of law that Property Trust and Portfolio were in privity with Management in relation to the UD Action. Although Property Trust has identified itself as an owner of Camanilo Oaks (Mot.13), and the parties agree that Property Trust owns all of its interests in real properties directly or indirectly through Portfolio (Statement of Genuine Issues in Opp'n ¶ 23), the ownership interest is not necessarily direct enough to establish privity. Defendants maintain that Portfolio was only a limited partner in the ownership of Camarillo 789 during the eviction process and the unlawful detainer action. (Ritter Decl. ¶ 4.) A limited partner contributes capital and shares profits but cannot manage the business. *Black's Law Dictionary* 1142–43 (7th ed.1999).

To establish that Portfolio was in privity because it controlled the UD Action, Plaintiffs would have to show that Portfolio was able to make decisions in the UD Action, such as "what legal theories and evidence should be advanced, . . . and whether an appeal should be taken from an adverse decision." *Algie v. RCA Global Commc'ns, Inc.,* 891 F.Supp. 839, 852 (S.D.N.Y.1994). Summary adjudication cannot be awarded against Portfolio because collateral estoppel would not apply against a limited partner where the party asserting res judicata has not demonstrated that the partner controlled the litigation. *See Dillard v. McKnight,* 34 Cal.2d 209, 209 P.2d 387, 391–91 (1949); *Doshi v. Hollingshead,* No. B152972, 2003 WL 42545, at *5 (Cal.Ct.App. Jan. 7, 2003).

As the sole general partner of Portfolio during the eviction process and unlawful detainer action (Ritter Decl. ¶ 5), Property

Trust controlled Portfolio. *See Black's Law Dictionary* 1142. But because Plaintiffs have not demonstrated that, as a matter of law, Portfolio controlled the UD Action and was therefore in privity with Management, summary judgment on the basis of collateral estoppel cannot be awarded against Property Trust either.

## III. *RULING*

Plaintiffs' Motion for Summary Adjudication is GRANTED IN PART and DENIED IN PART. Collateral estoppel establishes that Defendants Management and Camarillo 789 failed to reasonably accommodate Plaintiff David McAlister's son. Damages have yet to be determined.

Because the available evidence does not conclude as a matter of law that Defendants Property Trust and Portfolio were in privity with a party in the prior proceeding, Plaintiffs' Motion with respect to these defendants is DENIED without prejudice. Should discovery yield evidence that Property Trust and Portfolio were in position to control litigation in the UD Action, Plaintiffs may renew their motion.

IT IS SO ORDERED.