■ NATIONAL WESTMINSTER BANK USA, Appellant, v VANNIER GROUP et al., Respondents.—Order, Supreme Court, New York County (Carol E. Huff, J.), entered August 8, 1989, which denied plaintiff's motion for summary judgment, unanimously modified, on the law, to grant summary judgment on the first and third causes of action in the amount of $586,814.15, to dismiss the second cause of action and second counterclaim, and to sever plaintiff's claims for interest and attorneys' fees and defendants' first counterclaim, and is otherwise affirmed, without costs.

Plaintiff bank financed defendants' business chiefly through a credit device known as bankers acceptances. When several of these were not timely paid, a series of demand promissory notes was substituted therefor, and plaintiff continued to provide defendants with credit. Approximately six months

later, on August 9, 1988, plaintiff, in writing, offered to continue the line of credit and to forego payment on the promissory notes for at least another six months, until February 28, 1989 at the earliest, on condition that defendants, among other things, show progress in their efforts to sell off certain of their assets and pay a bankers acceptance that had fallen due on August 8 by August 10. When defendants failed to pay the bankers acceptance, plaintiff demanded payment of the notes.

Defendants argue that the notes, contrary to their tenor, were not demand instruments but "long-term capital loans" intended to finance the recovery of their business, and as such, were not to be repaid until some "mutually agreed upon future date" no earlier than February 28, 1989. Their theory is that the notes were given on the understanding that they were not to be called until defendants either sold off their assets or managed to put their business back in a good financial condition; that on numerous occasions after the notes were given plaintiff orally assured defendants that such was its understanding of the notes; that in reliance upon these assurances defendants decided to stay in business rather than sell off their assets; and that the writing of August 9 not only evidences these oral assurances but is itself an agreement to modify the notes so as to make them payable no earlier than February 28, 1989. None of this is of any merit.

Oral assurances and understandings notwithstanding, the notes, which provided that they could not be modified orally, could not be modified orally (General Obligations Law § 15-301). It was not until August 9, 1988, some six months after the notes were given, that a writing was generated, but it was just a proposal never accepted by defendants, and it certainly never caused them to change their position. Nor should plaintiff be estopped from asserting the absence of a writing because defendants, during the preceding six months, ostensibly in reliance upon plaintiff's oral assurances that it would not call the notes until a mutually agreed-upon future date, decided to stay in business rather than sell off their assets. Aside from the possibility that such an estoppel might well be precluded by public policy considerations occasioned by plaintiff's status as a bank *(see, Mount Vernon Trust Co. v Bergoff,* 272 NY 192), there are possible explanations for defendants' decision to stay in business other than the alleged oral assurances *(see, Bright Radio Labs. v Coastal Commercial Corp.,* 4 AD2d 491, *affd* 4 NY2d 1021; *Rose v Spa Realty Assocs.,* 42 NY2d 338, 344 ["conduct relied upon to establish estoppel

must not otherwise be compatible with the agreement as written"]), including, perhaps, a belief that plaintiff would be disinclined to call the notes if defendants showed progress in turning their business around. Being in default on the bankers acceptances, defendants had no choice but to accept whatever plaintiff might offer them in the way of "breathing room", and to hope that plaintiff, out of self-interest if not magnanimity, would understand the mutual advantages to be gained by an extension. Defendants apparently thought that the belt-tightening efforts they were making to put their business back on track would cause plaintiff to believe that it would soon get paid; plaintiff, apparently, was not impressed. The point is that the notes, as written, were subject to call at plaintiff's pleasure (UCC 3-122 [1] [b]; *see,* UCC 1-208, Comment [the "very nature" of demand instruments "permits call at any time with or without reason"]), and it cannot be said that defendants' decision to keep their business going was incompatible with that understanding, or unequivocally referable to a contrary understanding.

We sever the plaintiff's claim for interest since issues exist as to both the rate of interest due after default (raised by plaintiff's letter of March 9, 1989 which, ironically, just might be a writing modifying the notes within the meaning of General Obligations Law § 15-301, at least with respect to the rate of interest due after default) and the amount of interest actually paid since August 10, 1988, the date of default. Plaintiff may, however, immediately enter judgment in the principal amount of the notes.

We sever the first counterclaim, there being no appeal from IAS's decision sustaining it as limited by plaintiff's brief. While we hesitate to characterize this counterclaim in the absence of argument directly concerning it, its gist, in the broadest of terms, appears to be that plaintiff breached the financing agreement in July 1988 when it failed to timely pay drafts drawn on bankers acceptances, and breached it again on August 31, 1988 when it refused to provide defendants with any further credit. In response, plaintiff, in the factual portion of its brief, states only that the financing agreement "expired" on June 30, 1988. This assertion is not supported by any reference to documents in the record, and appears to be nothing but ipse dexit. In other words, there is insufficient to determine whether, as plaintiff asserts, the financing agreement expired on June 30, 1988 by its terms.

Our dismissal of the second cause of action is based on an admission by plaintiff that the principal sums demanded

therein have been paid, and is without prejudice to any claim for interest owing thereon. We dismiss the second counter-claim as redundant of the first insofar as it alleges that plaintiff's termination of the financing agreement was not in good faith, and as being without merit insofar as it alleges the same concerning plaintiff's demand for payment of the notes. We grant judgment on the third cause of action, which seeks to hold the individual defendants liable as guarantors of the corporate defendant's obligation on the notes, there being no argument by defendants that liability on the guarantees does not automatically follow from liability on the notes. Concur—Kupferman, J. P., Asch, Milonas, Wallach and Rubin, JJ.