CUE FASHIONS, INC., Plaintiff,

v.

LJS DISTRIBUTION, INC., d/b/a Phiara, LJS Leasing, Inc., d/b/a Phiara, Daybreak Express, Inc. and Albany Insurance Company, Defendants.

No. 91 Civ. 1224 (WCC).

United States District Court, S.D. New York.

Nov. 24, 1992.

Glauberman & Kessler, New York City (David Kessler, Robert L. Rotmil, of counsel), for plaintiff.

Kingsley & Kingsley, Hicksville, NY (Harold M. Kingsley, of counsel), for defendant Albany Ins. Co.

OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

Plaintiff Cue Fashions, Inc. brings this action as successor in interest to M.S.D. Apparel, Inc. (M.S.D. Apparel) under the Carmeck Amendment to the Interstate Commerce Act, 49 U.S.C. § 11707, for breach of contract, breach of implied warranty, strict liability, and negligence against LJS Distribution, Inc. (LJS Distribution) and Daybreak Express, Inc. (Daybreak). Plaintiff also states a claim against Albany Insurance Co. (Albany) for

breach of an insurance contract held by M.S.D. Apparel.[1] This action is presently before the Court on defendant Albany's motion for judgment on the pleadings pursuant to Rule 12(c), Fed.R.Civ.P., on the claim for breach of the insurance contract. The motion is granted.

## BACKGROUND

In June of 1990 M.S.D. Apparel contracted with defendant LJS Distribution to deliver, by July 6, 1990, a shipment of various types of garments from M.D.S. Apparel's place of business in New York to its customer, Clothestime, in California. Compl. ¶ 10. The goods were priced at $159,-679.55. *Id.* LJS Distribution then contracted with third party defendant Brody & Associates, Inc. who in turn contracted with defendant Daybreak to make the shipment. Compl. ¶¶ 11, 13. Daybreak made the delivery on July 11, 1990, but Clothestime rejected the goods because they smelled of garlic. Compl. ¶¶ 18, 19. Per M.S.D. Apparel's instructions, the goods were shipped back to New York where they were aired out and repackaged. M.S.D. Apparel then sold all but 90 units of the goods for $51,057. Compl. ¶ 21. Plaintiff alleges damages of $122,288.25 from this incident. Compl. ¶¶ 25, 30, 35, 37, 43, 52.

At all relevant times M.S.D. Apparel held a marine open cargo insurance policy with defendant Albany. Compl. ¶ 45. The insurance contract covers losses up to $500,-000 incurred by M.S.D. Apparel for physical damage to goods during shipments within the continental United States. Policy ¶¶ 2–4. Several clauses in the agreement exclude various types of damage from coverage. Policy ¶ 5(a)–(j). One such provision states that the policy does not insure against losses by goods "being scented" unless caused by an accident involving the transport vehicle. Policy ¶ 5(c). The issue before the Court is whether this exclusionary clause precludes plaintiff's recovery for the injury alleged.

## DISCUSSION

Preliminarily we hold that the relevant insurance contract is incorporated by reference into the complaint and thus we consider it pursuant to this motion on the pleadings. Upon examination of the policy we find that its plain meaning forecloses plaintiff's recovery for the damage alleged. Therefore, we grant defendant Albany's motion for judgment on the pleadings under Rule 12(c), Fed.R.Civ.P.

### I. *The Insurance Policy is Incorporated by Reference into the Complaint*

■ As a threshold matter, we must determine whether the insurance policy at issue is properly before the Court pursuant to this motion. When deciding a motion for judgment on the pleadings, a court may only analyze the content of the pleadings. *See Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir.1988). The pleadings are deemed to include any document attached as an exhibit or any document that the complaint incorporates by reference. *Goldman v. Belden,* 754 F.2d 1059, 1065–66 (2d Cir.1985). Since the insurance policy in the case at bar is not attached to the complaint but is supplied by plaintiff's opposition papers, the question is whether the complaint adequately incorporates it by reference so that the Court may consider it pursuant to this motion.

■ The complaint states that "[o]n or about January 9, 1990, defendant Albany made and issued to MSD [Apparel] its Open Cargo Policy of insurance number OMC 6012 ..., wherein and whereby it insured inter alia, shipments by MSD [Apparel] of finished goods while in due course of transit in the continental United States of America in an amount not exceeding $500,000." Compl. ¶ 45. When deciding a dispositive motion on the pleadings of a

---

**1.** Albany's answer contains an affirmative defense which claims plaintiff is not the real party in interest for the alleged breach of the insurance contract between M.S.D. Apparel and Albany. Answer ¶ 3. Because the complaint claims that plaintiff is the successor in interest to M.S.D. Apparel and neither party briefed the issue, for the purposes of this motion we treat plaintiff as if it stands in the shoes of M.S.D. Apparel.

contract claim, this Court (Judge Goettel) found that the pertinent contract, although outside the pleadings, was incorporated into the complaint by reference. *Long Island Lighting Co. v. Transamerica Delaval Inc.*, 646 F.Supp. 1442, 1446 n. 3 (S.D.N.Y.1986) (determining a motion to dismiss). Considering a document outside the pleadings is particularly appropriate in a case such as this where plaintiff's claim relies solely on its content. *I. Meyer Pincus & Assoc. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir.1991) (prospectus solely relied upon by plaintiff examined in determining a motion to dismiss, in spite of the fact that it was not attached to complaint or incorporated therein by reference). Furthermore, the main problem with weighing a document outside the pleadings pursuant to a motion on the pleadings is the lack of notice to the parties that it has been submitted to, and may be relied upon, by the court. *See, Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992). In the case at bar, plaintiff submitted the insurance policy to the Court, and defendant's sole argument in support of its motion requires the Court to refer to the contract. Thus, neither party can claim surprise or prejudice by our reliance upon the policy. Therefore, the insurance contract is incorporated into the complaint by reference and we consider it pursuant to this Rule 12(c) motion for judgment on the pleadings.

## II. *The Insurance Policy Does Not Cover the Type of Damage Claimed by Plaintiff*

■ In evaluating a Rule 12(c) motion, we view the pleadings in the light most favorable to plaintiff. *Madonna v. United States*, 878 F.2d 62, 65 (2d Cir.1989). However the language of the relevant contract is neither disputed nor ambiguous and, in these circumstances, contract interpretation is a matter of law. *United States v. Amtraco Commodity Corp.*, 389 F.Supp. 1084, 1089 (S.D.N.Y.1974); *Popkin v. Secu-*

*rity Mut. Ins. Co.*, 48 A.D.2d 46, 48, 367 N.Y.S.2d 492, 495 (1st Dep't 1975). Ambiguities in insurance contracts are construed against the insurer, but where a provision of the policy is clear it is given its ordinary meaning. *Lavanant v. General Accident Ins. Co.*, 79 N.Y.2d 623, 629, 584 N.Y.S.2d 744, 747, 595 N.E.2d 819, 822 (1992); *Breed v. Insurance Co. of N. Am.*, 46 N.Y.2d 351, 353–56, 413 N.Y.S.2d 352, 354–56, 385 N.E.2d 1280, 1282–1284 (1978). We find that the pertinent clause of the policy at issue is unambiguous and its plain language precludes recovery for the type of damage plaintiff alleges. The context in which the language is used supports this interpretation. Therefore, defendant's motion for judgment on the pleadings is granted pursuant to Rule 12(c), Fed.R.Civ.P.

■ The relevant portion of the insurance policy reads as follows:

4. THIS POLICY INSURES:

   Against all risks of direct physical loss of or damage to the insured property from any external cause (including General Average and/or salvage charges and expenses), except as herein excluded.

5. THIS POLICY DOES NOT INSURE:

   .    .    .    .    .

   (c) Against loss or damage by insects, vermin, leakage, evaporation, shrinkage, breakage, marring, chipping, denting, scratching, heat or cold, or *by being scented*, molded, rusted, rotted, soured or changed in flavor unless caused by fire, lightning, windstorm, flood, explosion or collision, derailment or overturning of vehicle while on land, or collision or crashing of aircraft while in flight, or by vessel, craft or lighter being stranded, sunk, burned or in collision while waterborne; Policy ¶¶ 4, 5 (emphasis added).

The dictionary relied on by, and quoted in, plaintiff's brief defines "scent", when used as a transitive verb, as "to fill with an odor".[2] Therefore, we find that the plain meaning of the contract language, "this policy does not insure ... against loss or

---

**2.** Plaintiff's brief quotes the definition of "scent" in the *Random House College Dictionary*, Re-     vised Edition 1979:

damage ... by being scented", excludes from coverage damages caused by a shipment of clothing being filled with garlic odor.[3]

The context in which "being scented" is found does not alter the ordinary meaning of the term. Plaintiff cites a rule of construction by which the Court may limit the meaning of a contract term by its context. *Popkin*, 48 A.D.2d at 48, 367 N.Y.S.2d at 495. When an insurance contract contains a list of excluded damages, the interpretation of one element on the list may be narrowed by considering the type and class of perils enumerated in the accompanying language.[4] *Holy Angels Academy v. Hartford Ins. Group*, 127 Misc.2d 1024, 1025, 487 N.Y.S.2d 1005, 1007 (Sup.Ct. 1985). Plaintiff argues that, because the term "being scented" is found with the terms "molded, rusted, rotted, soured or changed in flavor", its meaning should be limited to those odors that arise from natural phenomena because these words refer to damages caused by natural reactions. Pl's Br. at 4. However the relevant list also excludes damages for "breakage, marring, chipping, denting, [and] scratching" which clearly refer to damages caused by a piece of cargo's contact with another piece of cargo or with the transport vehicle or cargo handling equipment. Therefore the plain meaning of "being scented" is not limited to natural smells but extends to scents from contact with or proximity to other goods or the transport vehicle. This is precisely the type of damage claimed in the complaint.

### CONCLUSION

The plain meaning of the language in the insurance contract excludes from coverage the type of damage plaintiff alleges and the context of the exclusionary language supports this interpretation. Therefore, defendant's motion for judgment on the pleadings is granted pursuant to Rule 12(c), Fed.R.Civ.P., and the claim against Albany Insurance Co. is dismissed.

SO ORDERED.

---

scent (sent), n. 1. a distinctive odor, esp. when agreeable. 2. an odor, left in passing, by means of which an animal or person may be traced. 3. small pieces of paper dropped by the hares in the game of hares and hounds. 4. Chiefly Brit. perfume. 5. a sense of smell.—v.t. [verb transitive] 6. to perceive or recognize by or as by the sense of smell. 7. *to fill with an odor; perfume.*—v.i. 8. to hunt by the sense of smell, as a hound.
Pl's Br. at 4–5 (emphasis added).

**3.** Plaintiff attempts to obfuscate this clear cut interpretation by constructing an argument based on the dictionary definition of the word "scent" as a noun. When used as a noun "scent" is defined as "a distinctive odor". Plaintiff argues that the term should be limited to the odors inherent to the object, and an object is "scented" only when it is filled with an odor inherent to itself. Pl's Br. at 4–5. Therefore, plaintiff contends that the contract insures M.S.D. Apparel against all losses from any external cause except losses caused by goods being given an odor they already inherently possess. This nonsensical reading of the contract results from plaintiff's attempt to use the dictionary definition of a noun to define a verb in the contract. The noun "scent" means "a distinctive odor", and the transitive verb "scent" means "to fill with an odor". This definition informs our interpretation of the contract. The former term is not in the contract and any arguments based on its definition are unpersuasive.

**4.** For example in *Popkin*, 48 A.D.2d at 48, 367 N.Y.S.2d at 494, the term "flood" was found to be limited to natural floods when accompanied by "surface water, waves, tidal water or tidal waves, overflow of streams or other bodies of water." Similarly, in *Holy Angels*, 127 Misc.2d at 1024–25, 487 N.Y.S.2d at 1006–07, the term "earth movement" was limited to natural earth movements when accompanied by "earthquake, landslides, [and] mudflow[s]".