**VILLAGE ON CANON, Dayton–Canon, Geminus Corporation, and Jacobo Goldberg, Plaintiffs,**

v.

**BANKERS TRUST COMPANY, and Paul Turovsky, Defendants.**

**No. 95 Civ. 3706 (JGK).**

United States District Court, S.D. New York.

March 28, 1996.

William D. Grand, Greenbaum, Rowe, Smith, Ravin & Davis, Iselin, New Jersey, A. Barry Cappello, Michael W. McCann, James L. Hudgens, Cappello & McCann, Santa Barbara, California, for plaintiffs.

David B. Eizenman, David M. Satnick, Loeb & Loeb, New York City, for defendants.

## OPINION AND ORDER

KOELTL, District Judge.

This is an action arising from the failure to extend a $29 million bridge loan made by defendant Bankers Trust Co. ("Bankers Trust") to plaintiff Village On Canon ("VOC"), a California general partnership. The Complaint sets forth nine counts ranging from breach of contract and breach of fiduciary duty to intentional and negligent misrepresentation. The defendants, Bankers Trust and its officer Paul Turovsky now move to dismiss the entire Complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons that follow, the defendants' motion is **granted in part and denied in part.**

### I.

On a motion to dismiss, the allegations in the complaint are presumed true and all reasonable inferences are construed in the plaintiff's favor. *See Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir.1995); *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied*, — U.S. ——, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994). Moreover, the Court may consider documents attached to the complaint as exhibits or incorporated by reference. *See San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 808–810 (2d Cir.1996) (holding that documents integral to the complaint may be considered on a motion to dismiss even when only partially quoted in complaint); *National Ass'n of Pharmaceutical Mfrs., Inc. v. Ayerst Labs*, 850 F.2d 904, 910 n. 3 (2d Cir.1988); *Sazerac Co., Inc. v. Falk*, 861 F.Supp. 253, 257 (S.D.N.Y.1994); *Cue Fashions, Inc. v. LJS Distrib., Inc.*, 807 F.Supp. 334, 335 (S.D.N.Y.1992).[1] Accord-

---

1. Nearly all of the documents referred to in this Opinion were attached as exhibits to the Complaint and referred to in it. The only other documents considered were the Promissory Note and a November 27, 1990 letter to VOC from Bankers Trust. These two documents were referred to in the Complaint and were attached as exhibits to the moving affidavit of David Eizenman. At oral argument, the plaintiffs withdrew

ingly, the following facts are presumed true on this motion.

On November 20, 1989, Bankers Trust loaned VOC $29 million for one year, secured by VOC's interest in certain commercial real estate in California. (Compl. ¶ 22–23.) The Bankers Trust loan to VOC was guaranteed by plaintiffs Geminus, a Cayman Island corporation, (Compl. ¶ 3), and Goldberg, an officer of Geminus and VOC's primary investor, either individually or through his corporate affiliates. .(Compl. ¶ 4.) To support the guaranties, Geminus established a pair of $3 million collateral accounts, one to finance property improvements to ensure completion of the real estate project, and the other to guaranty debt service on the VOC loan. (Compl. ¶ 22.)

The terms and conditions of the loan and the guaranties were documented by a Loan Agreement and Promissory Note, both executed by VOC, a Guaranty of Completion executed by Geminus, and Debt Service Guaranties executed by both Geminus and Goldberg. (*See* Compl.Exs. 1–3, 5; Affidavit of David B. Eizenman, sworn Aug. 2, 1995, Ex. B.) The Loan Agreement included several customary provisions, including a merger and integration clause, (Compl.Ex. 1, ¶¶ 9.1, 9.18), a prohibition against oral modifications, (Compl.Ex. 1, ¶ 9.1), and a denial of waiver by course of conduct or forbearance. (Compl.Ex. 1, ¶¶ 9.1, 9.2.) The Loan Agreement also made nonpayment of the loan at maturity an Event of Default. (Compl.Ex. 1, ¶ 8.1(a)(i).) The Guaranty of Completion and Geminus Debt Service Guaranties gave Bankers Trust sole and absolute discretion to apply any undisbursed funds from the collateral accounts towards outstanding indebtedness under the Loan Agreement as of the maturity date. (*See* Compl.Ex. 2, ¶ 13, Ex. 3, ¶ 13.)

With respect to the financing itself, Bankers Trust had the right to sell participation interests in the loan to other financial institutions at any time. (Compl.Ex. 1, ¶ 9.4(c).) Any such participant would be entitled to require Bankers Trust to obtain the participant's consent before extending the maturity of the loan. (*See* Compl.Ex. 1, ¶ 9.4(c)(b)(III).)

The loan closed and the funds and relevant documents were transmitted on November 20, 1989. (Compl. ¶ 23.) The debt service and completion collateral accounts were also funded for $3 million each to secure the Guaranties. (Compl. ¶ 25.)

Shortly after the closing, Bankers Trust and VOC entered into an exclusive agency arrangement that enabled Bankers Trust to solicit investors to provide long-term financing to VOC beyond the term of the bridge loan. This arrangement was documented by a Financial Advisor Agreement. (Compl.Ex. 4.) Bankers Trust's role as exclusive agent for placing VOC's permanent financing was included in the original negotiations regarding the bridge loan, (Compl. ¶ 17), and appeared as a term in Bankers Trust's Commitment Letter. (Compl. ¶¶ 18–19.)

According to the Complaint, VOC received oral assurances from Bankers Trust that the bridge loan would be extended if permanent financing was not arranged before the November 20, 1990 maturity date. (Compl. ¶ 20.) VOC alleges that such oral promises were made before, during, and after the loan closed. (Compl. ¶¶ 20, 24, 28, 30.) On August 6, 1990, representatives of Bankers Trust and VOC met to discuss terms of the loan extension. (Compl. ¶ 30.) Bankers Trust sent VOC a letter dated August 31, 1990 setting forth the terms and conditions for the proposed extension. (Compl. ¶¶ 31–32, Ex. 6.) The letter indicated that the extension fee would be determined by the participants and explained that:

> After receipt of the above-mentioned items we will contact participants to determine their requirements for approving the extension. Although participants have expressed concern regarding the leasing status of the property, we believe they will consent to the extension with the terms mentioned above if they are assured that Bankers Trust is actively involved in marketing the property. We will advise you as soon as possible regarding the outcome of our discussions with the participants.

---

any objection to the consideration of these documents for purposes of the motion to dismiss.

Once we receive approval from participants, we will proceed with Bankers' approval process.

(Compl.Ex. 6.) VOC responded by letter dated September 6, 1990, purporting to accept the terms of the August 31 letter, although VOC quarrelled with two items—whether any legal fees needed to be paid by VOC, and the amount of the late fee charged by Bankers Trust. (Compl. ¶ 33, Ex. 7.)

No extension was ever made. The loan matured on November 20, 1990. (Compl. ¶ 35.) Contrary to the express terms of the August 31, 1990 letter, VOC alleges that it was at this point that Bankers Trust informed it for the first time that the extension required the approval of the participants. (Compl. ¶ 36.) On November 27, 1990, Bankers Trust withdrew from the Financial Advisor Agreement and terminated the agreement. (Compl. ¶ 37; Eizenman Aff.Ex. C.) In December 1990, VOC requested certain disbursements from the completion collateral account, but Bankers Trust refused to release any funds. (Compl. ¶ 41.) From the time the loan matured, VOC, (Compl. ¶ 36), and the guarantors, (Compl. ¶ 40), continued to make interest payments on the loan, while continuing to negotiate through late 1991 for an extension. (Compl. ¶ 39.)

On December 26, 1991, Bankers Trust advised VOC's tenants to remit their rental payments directly to the bank, (Compl. ¶ 43), and Bankers Trust charged the debt service and completion collateral accounts to pay unpaid principal and interest on the VOC loan. (Compl. ¶ 43.) Following a period from January 1992 to April 1992 during which VOC unsuccessfully sought bankruptcy protection, Bankers Trust conducted a trustee's sale and a nonjudicial foreclosure on the property. (Compl. ¶ 44.)

VOC then initiated this action, alleging the foregoing facts, arguing principally that Bankers Trust's failure to extend the loan as it allegedly promised to do, combined with Bankers Trust's withdrawal from the exclusive agency agreement, caused the failure of the real estate venture. Bankers Trust characterizes this suit somewhat differently, essentially relying on the documents to argue that it acted well within its legal rights and that the sequence of events alleged by VOC are simply not actionable under any of the nine counts in the Complaint.

## II.

█ The parties have argued this motion under New York law. Each of the documents contains a choice of law clause that requires the application of New York law, and therefore the parties are correct. (*See* Compl.Exs. 1, ¶ 9.13 (Loan Agreement), 2, ¶ 16(a) (Guaranty of Completion); 3, ¶ 12(a) (Geminus Debt Service Guaranty), 4, ¶ 15 (Financial Advisor Agreement), 5, ¶ 12(a) (Goldberg Debt Service Guaranty); Eizenman Aff.Ex. B., ¶ 16(a) (Promissory Note).) Choice of law clauses in loan documents and contracts are generally honored in New York. *See Freedman v. Chemical Constr. Corp.*, 43 N.Y.2d 260, 265 n. *, 401 N.Y.S.2d 176, 179 n. *, 372 N.E.2d 12 (1977); *Culbert v. Rols Capital Co.*, 184 A.D.2d 612, 613, 585 N.Y.S.2d 67, 68 (2d Dep't 1992).

## III.

The first and second counts set forth claims for breach of contract regarding Bankers Trust's alleged promise to extend the maturity of the loan. Count I alleges breach of an oral promise by Bankers Trust made prior to, (Compl. ¶¶ 19–24), contemporaneous with, (Compl. ¶¶ 24, 27, 47), and after, (Compl. ¶¶ 24, 30, 47), the closing of the loan. Count II alleges that the exchange of written correspondence in August and September 1990 established a written agreement to extend the loan and that Bankers Trust breached that agreement as well. (Compl. ¶ 52, Exs. 6–7.) Neither claim for breach of contract states a claim upon which relief can be granted.

### A.

█ New York law permits parties to a written contract to agree that modification of that contract must also be in writing. General Obligations Law § 15–301(1) provides that: "A written agreement ... which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory

agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent." *See also Rose v. Spa Realty Assocs.*, 42 N.Y.2d 338, 397 N.Y.S.2d 922, 366 N.E.2d 1279 (1977); *Opton Handler Gottlieb Feiler Landau & Hirsch v. Patel*, 203 A.D.2d 72, 73, 610 N.Y.S.2d 26, 27 (1st Dep't 1994). The Loan Agreement and the Promissory Note both include provisions prohibiting oral modifications. (Compl.Ex. 1, ¶ 9.1; Eizenman Aff. Ex. B, ¶ 16(c).) The alleged oral agreement to extend the maturity of the loan is a modification of express terms in the written loan agreements, (*see* Compl.Ex. 1, ¶ 2.2 (maturity date); Eizenman Aff.Ex. B., ¶ 3 (same)), and is therefore barred by the provisions prohibiting such oral modifications pursuant to GOL § 15–301(1). *See, e.g., Towers Charter & Marine Corp. v. Cadillac Ins. Co.*, 894 F.2d 516, 521–22 (2d Cir.1990).

■ There are two exceptions to the no-oral-modifications rule: partial performance and equitable estoppel. Plaintiffs argue that both exceptions apply. The New York Court of Appeals explained these exceptions as follows:

> Partial performance of an oral agreement to modify a written contract, if unequivocally referable to the modification, avoids the statutory requirement of a writing.
>
> . . . . .
>
> Analytically distinct from the doctrine of partial performance, there is the principle of equitable estoppel. Once a party to a written agreement has induced another's significant and substantial reliance upon an oral modification, the first party may be estopped from invoking the statute to bar proof of that oral modification. Comparable to the requirement that partial performance be unequivocally referable to the oral modification, so, too, conduct relied upon to establish estoppel must not otherwise be compatible with the agreement as written.

*Rose*, 42 N.Y.2d at 341, 344, 397 N.Y.S.2d at 924, 927, 366 N.E.2d at 1281, 1284 (citations omitted). *See Towers*, 894 F.2d at 522.

■ Plaintiffs argue for both exceptions on the basis of their continuing to make interest payments on the loan even after the maturity date had passed, Bankers Trust's acceptance of those payments, and Bankers Trust's failure to institute foreclosure proceedings. None of these acts, however, is unequivocally referable to an agreement to extend the loan because they are each wholly compatible with the terms and conditions of the written loan documents. VOC's continuing to pay interest while discussing an extension of the loan and attempting to avoid foreclosure was perfectly consistent with the terms of the loan documents. (*See* Compl. Ex. 1, ¶ 2.4(c) (providing for interest payments after maturity or an Event of Default).) The documents also make it clear that Bankers Trust's acceptance of those payments without commencing foreclosure proceedings does not constitute a waiver by Bankers Trust of any of its rights under the documents. (*See* Compl.Ex. 1, ¶¶ 8.2(a) (providing for election of remedies by lender), 9.2 (no waiver of remedies by course of conduct); Eizenman Aff.Ex. B, ¶¶ 6 (acceptance of payments does not constitute waiver or extension), 16(c) (election of remedies).) Accordingly, neither exception to GOL § 15–301(1) applies in this case. *See National Westminster Bank v. Ross*, 130 B.R. 656, 676 (S.D.N.Y.1991), *aff'd sub nom. Yaeger v. National Westminster*, 962 F.2d 1 (2d Cir.1992); *National Westminster Bank v. Vannier Group*, 160 A.D.2d 348, 554 N.Y.S.2d 482 (1st Dep't 1990).

■ Plaintiffs also argue that Geminus and Goldberg, VOC's guarantors, liquidated certain assets to pay off a related debt to one of VOC's general partners, plaintiff Dayton–Canon, (*see* Compl. ¶ 38), and that this step was taken because of Bankers Trust's assurance that it would facilitate an extension of the VOC loan. There is no allegation that anything about this act was inconsistent or incompatible with any of the conditions of the VOC loan, and it is perfectly consistent with continuing to negotiate to extend the maturity of the loan without having reached an agreement. Without more, a guarantor's election to liquidate its own assets to reduce the debts of other entities for which it is a guarantor is not an act unequivocally referable to an agreement to extend the maturity

on another debt on which it is a guarantor. Nor in this case is it an act that is otherwise incompatible with the written loan or guaranty documents unmodified by the alleged oral agreement to extend the loan. Therefore, the alleged acts of VOC's guarantors do not support either the partial performance or equitable estoppel exception.

Additionally, VOC alleges that negotiations with Bankers Trust to extend the loan continued through December 1991. (Compl ¶ 39.) Consequently, even if any of the facts alleged by the plaintiffs were sufficient to support either partial performance or equitable estoppel, which I find they are not, the Complaint itself alleges that negotiations to extend the loan were on-going. This allegation is utterly inconsistent with the existence of an oral agreement that the maturity date had already been extended.

Accordingly, because no exception is available, and because the Complaint itself is inconsistent with the existence of any agreement, the provisions of the loan documents precluding oral modifications and GOL § 15–301(1) govern. Therefore, plaintiffs' claim for breach of an oral contract modifying the maturity date of the loan is dismissed.

### B.

The plaintiffs' argument that there was an oral agreement executed prior to and contemporaneous with the execution of the Loan Agreement and Promissory Note also fails because it contradicts both the express provisions of these agreements establishing the maturity date of the loan and the provisions specifying that the agreements contain the entire agreement between the parties superseding all prior agreements and understandings. (Compl.Ex. 1, ¶ 9.18 (entire agreement/integration clause); Eizenman Aff.Ex. B, ¶ 16(a) (same).) Such clauses are enforceable according to their terms to bar claims based on prior understandings that contradict the plain terms of the written agreements. *See, e.g., Leumi–Financial Corp. v. Richter*, 17 N.Y.2d 166, 173, 269 N.Y.S.2d 409, 413, 216 N.E.2d 579, 582 (1966); *European American Bank v. Village Square Assocs. Ltd. Partnership*, 212 A.D.2d 754, 755, 623 N.Y.S.2d 296, 297 (2d Dep't 1995); *Royal Bank of Canada v. Mahrle*, 818 F.Supp. 60, 62 (S.D.N.Y.1993); *Congress Financial Corp. v. John Morrell & Co.*, 790 F.Supp. 459, 468 (S.D.N.Y.1992). Any previous agreement to modify the maturity date of the loan contradicts the express terms of both the Loan Agreement and the Promissory Note setting the maturity date at November 20, 1990. It is plain that any such alleged oral agreement would be unenforceable under New York law. *See National Bank of New York City v. ESI Group, Inc.*, 167 A.D.2d 453, 454, 562 N.Y.S.2d 136, 136 (2d Dep't 1990) "Defendants' claim that plaintiff bank orally agreed to a[n] ... extension of the note[s] beyond [their] due date contradicts the express terms of the instrument[s] ... and is therefore unavailable because it would violate the parol evidence rule[.]" (quoting *American Bank & Trust Co. v. Computer Productions, Inc.*, 36 A.D.2d 525, 525, 317 N.Y.S.2d 975, 976 (1st Dep't 1971)).[2] Therefore, the plaintiffs' claim for breach of an oral agreement is also dismissed based on the parol evidence rule insofar as that claim relies on an agreement executed before or at the same time as the Loan Agreement and Promissory Note.

**2.** Plaintiffs cite *Bank of Beverly Hills v. Catain*, 128 Cal.App.3d 28, 180 Cal.Rptr. 67 (Ct.App. 1982) for the proposition that an agreement to extend a loan does not conflict with the express terms of the loan agreements. The parties concede, however, that this action is governed by New York law, and the California parol evidence rule is not identical to New York's. *See, e.g., Hanson v. McCaw Cellular Communications, Inc.*, 77 F.3d 663, 667 (2d Cir.1996). In any event, *Catain* does not dictate a different result here. In that case, the court reversed a grant of summary judgment, holding that documentary evidence of a payment schedule to be instituted after maturity of the loan was admissible because that type of payment schedule did not conflict with the terms of the loan agreement itself. *See Catain*, 128 Cal.App.3d at 36, 180 Cal.Rptr. at 72. In this case, VOC and the other plaintiffs do not argue that a discrete repayment schedule was to follow the bridge loan's maturity on November 20, 1990. The plaintiffs contend that the maturity date would be changed, extending the repayment of the bridge loan itself. Accordingly, *Catain*, to the extent it is persuasive as an opinion from an intermediate state court applying California law, is not applicable to this case.

## C.

Plaintiffs' claim for breach of an alleged written agreement consisting of the exchange of letters in August and September 1990 fails because the letters by their terms do not constitute an agreement to extend the loan. Rather, the letters discuss proposed terms for an extension that would depend on the approval of the loan participants. As the August 31 letter from Bankers Trust states:

> [W]e will contact the participants to determine their requirements for approving the extension. Although participants have expressed concern regarding the leasing status of the property, we believe they will consent to the extension.... *We will advise you as soon as possible regarding the outcome of our discussion with the participants.* Once we receive approval from participants, we will proceed with Bankers' approval process.

(Compl.Ex. 6 (emphasis added).) Given that the Loan Agreement explicitly allows for consent by any participants prior to an extension being granted, (*see* Compl.Ex. 1, ¶ 9.4(c)(b)(III)), the language in the August 31 letter cannot be read to be an offer to extend the maturity of the loan without having obtained the prior consent of the loan participants. The letter unambiguously states that Bankers Trust must obtain the agreement of the participants before agreeing to the extension.

The August 31 letter also makes clear that Bankers Trust must receive from VOC a late fee payment and certain annual financial statements before Bankers Trust could approach the loan participants to request their consent to an extension. Indeed, VOC's September 6, 1990 letter in response, although purporting to accept the proposed terms, contemplates that another letter will be sent to document the extension once the consent of the participants is obtained. (*See* Compl. Ex. 7.) Moreover, VOC acknowledges in its September 6 letter that Bankers Trust had also conditioned any extension on VOC's payment of certain disputed amounts—a condition at which VOC balked, indicating a desire to get Bankers Trust's "views further on this *before* we are forced to send you the payment." (Compl.Ex. 7 (emphasis added).)

Evidently, VOC did not agree to the terms proposed in the August 31 letter and wanted further negotiations.

Bankers Trust's letter was not an offer that could be accepted because Bankers Trust expressly indicated that the agreement of the participants was needed before an extension could be granted. Even if it was such an offer, VOC did not unconditionally accept it because VOC disputed the terms of Bankers Trust's letter. In fact, as discussed above, the plaintiffs allege that negotiations continued for more than a year after this alleged written agreement by exchange of letters occurred. The continued negotiations cannot be reconciled with the agreement alleged by the plaintiffs. *See Jim Bouton Corp. v. Wm. Wrigley Jr. Co.*, 902 F.2d 1074, 1080 (2d Cir.), *cert. denied*, 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990) ("[W]e can see no purpose or intent in those lengthy negotiations if a binding amendment already had been agreed upon.").

The terms of the two letters do not evidence an agreement between the parties. There was neither an offer that could be accepted nor an unconditional acceptance. Therefore, there was no agreement by the parties to be bound to any agreement to extend the loan. *See Jim Bouton*, 902 F.2d at 1081 (providing examples of similar language in correspondence indicating "beyond cavil" that parties did not intend to be bound); *U.S. West Fin. Servs. Inc. v. Tollman*, 786 F.Supp. 333, 342 (S.D.N.Y.1992) (no contract where mutual assent is lacking). Because there was never a binding written agreement to extend the maturity of the loan, VOC's claim that Bankers Trust breached such an agreement fails to state a claim as a matter of law. Count II is therefore dismissed.

## IV.

Count IV alleges that Bankers Trust breached the Loan and Guaranty Agreements by refusing to release funds from the completion and debt service collateral accounts, applying those amounts instead to the outstanding indebtedness. (Compl. ¶¶ 43, 64.) These claims fail because the

very terms of the agreements permit Bankers Trust to take these actions. *See Sazerac Co. v. Falk,* 861 F.Supp. 253, 257 (S.D.N.Y. 1994) (conclusory allegations in direct conflict with governing documents do not state a claim). VOC does not dispute that its failure to pay the loan at maturity was an Event of Default as defined in the Loan Agreement. (Compl.Ex. 1, ¶ 8.1(a)(i).) Under the terms of the Loan Agreement, the Promissory Note, and the Guaranties, Bankers Trust's obligation to disburse funds from the collateral accounts was conditioned expressly on there being no Event of Default, and in such an event, Bankers Trust became entitled to apply funds from the collateral accounts to the loan in its sole and absolute discretion. (Compl.Ex. 1, ¶ 4.2(ii), Ex. 2, ¶ 13, Ex. 3, ¶ 13; Eizenman Aff.Ex. B. ¶ 17.) This is precisely what VOC alleges occurred.

Accordingly, because the acts about which VOC complains were taken pursuant to, rather than in breach of, the unambiguous terms of its agreements with Bankers Trust, Count IV fails to state of claim for breach of contract and that claim is dismissed.

### V.

The next three claims are premised on various alleged misrepresentations and omissions by Bankers Trust. Count V asserts a claim for fraudulent nondisclosure in that Bankers Trust allegedly failed to inform VOC that an extension of the loan was subject to the approval of participants. (Compl. ¶¶ 21, 30, 36, 67.) Count VI asserts a claim based on intentional misrepresentation, alleging that Bankers Trust fraudulently misrepresented that it would extend the loan and would act as VOC's exclusive marketing agent for the project. (Compl. ¶¶ 75–77.) Count VII pleads a claim for negligent misrepresentation with respect to the same alleged oral representations that are pleaded in Count VI. (*See* Compl. ¶ 84–87.) These three claims each fail because VOC has not pleaded the element of reasonable reliance.

■■■ Under New York law, reasonable reliance is an essential element of a claim for fraud. *See Keywell Corp. v. Weinstein,* 33 F.3d 159, 163 (2d Cir.1994) (setting forth elements of fraud in New York); *Albert*

*Apartment Corp. v. Corbo Co.,* 182 A.D.2d 500, 500, 582 N.Y.S.2d 409, 410 (1st Dep't 1992) (same), *lv. to appeal dismissed,* 80 N.Y.2d 924, 589 N.Y.S.2d 311, 602 N.E.2d 1127, (1992) (table); *Megaris Furs, Inc. v. Gimbel Bros., Inc.,* 172 A.D.2d 209, 212–13, 568 N.Y.S.2d 581, 584–85 (1st Dep't 1991) (reliance requires cause-and-effect relationship). Reliance is also required in the case of fraudulent concealment. *See Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 152 (2d Cir.1993); *Ziring v. Corrugated Container Corp,* 183 Misc. 600, 604, 49 N.Y.S.2d 686, 691 (N.Y.Sup.Ct. Kings Co.1944) ("where redress is sought for fraudulent concealment, it must appear that plaintiff relied on defendant to make disclosure of the fact concealed and that the concealment was a moving inducement to plaintiff's change of position"). It is also a required element of a claim for negligent misrepresentation. *See Pappas v. Harrow Stores, Inc.,* 140 A.D.2d 501, 504, 528 N.Y.S.2d 404, 407 (2d Dep't 1988) ("In order to recover on a theory of negligent misrepresentation, a plaintiff must establish that, because of some special relationship with the defendant which generally implies a closer degree of trust than the ordinary buyer-seller relationship, the law imposes on that defendant a duty to use reasonable care to impart correct information, that the information is false or incorrect, and that the plaintiff reasonably relied upon the information given. . . ."). Here, the plaintiffs have not adequately pleaded reasonable reliance for any of the three claims.

### A.

■■■ The allegations that Bankers Trust fraudulently concealed from VOC the fact that the loan participants' consent would be required for an extension, and that Bankers Trust misrepresented that it would not obtain loan participants in a way that would yield authority for granting an extension are flatly contradicted by the terms of the Loan Agreement, (*see* Compl.Ex. 1, 9.4(c)), and the terms of the August 31, 1990 letter. (*See* Compl.Ex. 6.) The Loan Agreement expressly provides that Bankers Trust had the right to sell participation interests in the loan at any time, and that the participants' con-

sent could be required for any extension of the maturity of the loan. (Compl.Ex. 1, ¶¶ 9.4(c)(ii), 9.4(c)(b)(III).) Moreover, as set forth in the Loan Agreement, VOC agreed that sale of participation interests would give rise to VOC's direct obligation to the holder of such an interest, and that such a holder would be considered to be a "Lender" within the meaning of that term under the Loan Agreement. (Compl.Ex. 1, ¶ 9.4(c)(b)(IV).) VOC's allegations are flatly contradicted by these express terms of the Loan Agreement. Because VOC is presumed to have read this unambiguous document, it cannot now argue that it relied on Bankers Trust's alleged failure to disclose the document's terms or Bankers Trust's alleged oral representations to the contrary. *See Bank Leumi v. D'Evori Int'l, Inc.*, 163 A.D.2d 26, 32, 558 N.Y.S.2d 909, 915 (1st Dep't 1990) ("[R]eliance is an essential element of [a fraud] claim or defense, and given the unambiguous terms of the loan agreement ... any such reliance would not be justified.... The loan agreement expressly precludes reliance on any oral agreement to modify its terms."); *Humble Oil & Ref. Co. v. Jaybert Esso Serv. Sta., Inc.*, 30 A.D.2d 952, ——, 294 N.Y.S.2d 190, 192 (1st Dep't 1968) ("Since the written instrument contains terms different from those allegedly orally represented, and [defendant] is presumed to have read the writing, he may not claim he relied on the representations.").

The remaining allegedly fraudulent misrepresentation is that Bankers Trust represented its intent to act as VOC's exclusive marketing agent when it did not intend to do so. This allegation is nothing more than a claim that Bankers Trust did not intend to comply with the express terms of the Financial Advisor Agreement. The mere allegation that a party to a contract did not intend to perform an express contractual promise does not state a claim for fraud under New York law. *See, e.g., PI, Inc. v. Quality Prods., Inc.*, 907 F.Supp. 752, 761–62 (S.D.N.Y.1995) (collecting New York cases); *Caniglia v. Chicago Tribune–New York News Syndicate, Inc.*, 204 A.D.2d 233, ——, 612 N.Y.S.2d 146, 147 (1st Dep't 1994) (a cause of action does not lie where "the only fraud alleged merely relates to the contract-

ing party's alleged intent to breach a contractual obligation").

### B.

The claim for negligent misrepresentation also fails to state a claim on the independent ground that there is no special relationship between the parties. Under New York law, there is no action for negligent misrepresentation of a promise of future conduct unless there is a special relationship between the parties. *See American Protein Corp. v. AB Volvo*, 844 F.2d 56, 63–64 (2d Cir.), *cert. denied*, 488 U.S. 852, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988); *Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank*, 755 F.2d 239, 252–53 (2d Cir.), *cert. denied*, 473 U.S. 906, 105 S.Ct. 3530, 87 L.Ed.2d 654 (1985); *Frutico, S.A. de C.V. v. Bankers Trust Co.*, 833 F.Supp. 288, 300 (S.D.N.Y. 1993), *aff'd*, 23 F.3d 396 (2d Cir.1994); *Banque Arabe v. Maryland Nat'l Bank*, 819 F.Supp. 1282, 1293 (S.D.N.Y.1993) ("Under New York law, there is no cause of action for negligent misrepresentation 'in the absence of a special relationship of trust and confidence between the parties.' "), *aff'd*, 57 F.3d 146 (2d Cir.1995); *U.S. West Fin. Servs., Inc. v. Tollman*, 786 F.Supp. 333, 344 (S.D.N.Y. 1992) (citing *Murray v. Xerox Corp.*, 811 F.2d 118, 123 (2d Cir.1987)).

The plaintiffs allege that the parties are in such a special relationship by virtue of the long-standing financial advisory relationship between Goldberg and Bankers Trust and the agency agreement between VOC and Bankers Trust. As explained in the next section of this Opinion, the Financial Advisor Agreement between VOC and Bankers Trust does not create a fiduciary relationship. It is merely an arms-length, contractual arrangement for Bankers Trust to locate potential investors and bring them together with the plaintiffs. Neither do the loan and guaranty documents themselves give rise to a special relationship sufficient to sustain an action for negligent misrepresentation. As New York courts routinely explain, "[t]here is no fiduciary duty or privity of contract arising out of the contractual arms-length debtor and creditor legal relationship between a borrower and a bank which would

give rise to a cause of action for negligent misrepresentation." *Banque Nationale de Paris v. 1567 Broadway Ownership Assocs.*, 214 A.D.2d 359, 360, 625 N.Y.S.2d 152, 154 (1st Dep't 1995); *see Chester Color Separations, Inc. v. Trefoil Capital Corp.*, —— A.D.2d ——, ——, 636 N.Y.S.2d 613, 614 (1st Dep't 1995); *Marine Midland Bank, N.A. v. Hallman's Budget Rent-A-Car of Rochester, Inc.*, 204 A.D.2d 1007, 1008, 613 N.Y.S.2d 92, 92 (4th Dep't 1994). Similarly, to the extent that Geminus and Goldberg assert the claim as guarantors, Bankers Trust owed no special duty to them either. *See Bank Leumi Trust Co. of New York v. Block 3102 Corp.*, 180 A.D.2d 588, 589, 580 N.Y.S.2d 299, 300 (1st Dep't), *lv. to appeal denied*, 80 N.Y.2d 754, 587 N.Y.S.2d 906, 600 N.E.2d 633 (1992) (table). Accordingly, in addition to their failure to plead reasonable reliance, the plaintiffs also fail to state a claim for negligent misrepresentation because of the lack of special relationship between the parties. The claim for negligent misrepresentation is dismissed on that independent basis as well.

## VI.

■ In Count VIII plaintiffs allege a claim for breach of fiduciary duty, arguing that a fiduciary relationship existed between VOC and Bankers Trust by virtue of the Financial Advisor Agreement and between the two guarantors and Bankers Trust by virtue of their prior banking relationship. (Compl. ¶¶ 92–93.) The plaintiffs allege that Bankers Trust breached these fiduciary duties by "lulling plaintiffs into believing that an extension would be granted in order to encourage additional secured debt," by failing to disclose that Bankers Trust would not have exclusive control over the approval of any extension, by failing to place VOC's long-term financing, and by otherwise taking advantage of the plaintiffs in unspecified ways. (Compl. ¶¶ 94(a)–(d).) Bankers Trust argues that no fiduciary relationship existed between it and any of the plaintiffs.

Bankers Trust is correct. With respect to Goldberg and Geminus, under New York law no fiduciary relationship arises from a long-standing debtor-creditor or creditor-guarantor relationship as alleged in the Complaint.

*See Banque Nationale*, 214 A.D.2d at 360, 625 N.Y.S.2d at 153; *Marine Midland*, 204 A.D.2d at 1008, 613 N.Y.S.2d at 92; *Bank Leumi*, 180 A.D.2d at 589, 580 N.Y.S.2d at 301 ("The legal relationship between a borrower and a bank is a contractual one of debtor and creditor and does not create a fiduciary relationship between the bank and its borrower or its guarantors."), *appeal denied*, 80 N.Y.2d 754, 587 N.Y.S.2d 906, 600 N.E.2d 633 (1992); *see also Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank*, 731 F.2d 112, 122 (2d Cir.1984) (long standing correspondent banking relationship insufficient to create fiduciary relationship); *Compania Sud–American v. IBJ Schroder Bank & Trust Co.*, 785 F.Supp. 411, 426 (S.D.N.Y. 1992) (fifty-year conventional business relationship did not create fiduciary duty). In this case the plaintiffs do not allege that Bankers Trust's relationship to Goldberg and Geminus, as long and as mutually profitable as it may have been, was anything beyond that exemplified by the Loan Agreement and Guaranties—that of creditor and guarantors. Because such a relationship does not create a fiduciary duty between the parties under New York law, there can be no claim against Bankers Trust for breach of fiduciary duty.

■ The Financial Advisor Agreement is not a basis for a fiduciary relationship either. It is true that an exclusive agency gives rise to a fiduciary duty between principal and agent under New York law. *See L.F. Rothschild & Co. Inc. v. A.F. Holding, Inc.*, No. 87 Civ. 5134, 1990 WL 37856, at *5 (S.D.N.Y. Mar. 28, 1990); *Interactive Props. Inc. v. Doyle Dane Bernbach, Inc.*, 125 A.D.2d 265, 272, 509 N.Y.S.2d 806, 811 (1st Dep't 1986), *appeal denied*, 70 N.Y.2d 613, 524 N.Y.S.2d 431, 519 N.E.2d 342 (1987). VOC argues that Bankers Trust was subject to such a duty as VOC's exclusive marketing agent under the Financial Advisor Agreement. The terms of the agreement, however, make clear that Bankers Trust was not VOC's agent but rather was VOC's finder.

Bankers Trust's obligations under the agreement were limited to "approach[ing] domestic and foreign financial institutions and other qualified investors," (Compl.Ex. 4, ¶ 1), and to "assess[ing] the interest of the Inves-

tors in Purchasing or providing Financing and [ ] obtaining proposals[s] from them...." (Compl.Ex. 4., ¶ 2.) Bankers Trust had no authority to commit VOC to any proposal or to negotiate on VOC's behalf, as the terms of the agreement make clear. (Compl.Ex. 4, ¶ 1.) Bankers Trust could only evaluate the proposals and make recommendations. (Compl.Ex. 4, ¶ 6.) For these services Bankers Trust would earn a fee based on a percentage of the value of a deal struck with the investor. (Compl.Ex. 4, ¶¶ 7–8.) In other words, rather than acting as a broker, Bankers Trust's role under the Financial Advisor Agreement was to find interested investors and direct them to VOC, for which Bankers Trust would earn a finder's fee. This arrangement is not the kind of "exclusive agency" that imposes a fiduciary duty under New York law. As the New York Court of Appeals has explained:

> [A] finder is not a broker, although they perform some related functions. Distinguishing between a broker and finder involves an evaluation of the quality and quantity of services rendered. The finder is required to introduce and bring the parties together, without any obligation or power to negotiate the transaction, in order to earn the finder's fee.
>
> . . . . .
>
> We note, too, that while agents in New York are bound to exercise the utmost good faith toward their principals, the ... finder in this case was also not an agent in the actual or functional meaning of that term and relationship. This finder had no explicit or implied power to bind [the principal]. This finder did not have the power to negotiate the transaction. This finder did not have the power to do anything except find and introduce prospects.... Thus, by agreement and through the actions of the parties, this finder had no power to affect any legal relations of [the principal] and the prospective buyer that would propel the duties into the fiduciary-like sphere.

*Northeast General Corp. v. Wellington Advertising, Inc.,* 82 N.Y.2d 158, 163–64, 604 N.Y.S.2d 1, 4, 624 N.E.2d 129, 132 (1993) (citation omitted). *See also Shultz v. Manu-*

*facturers & Traders Trust Co.,* 40 F.Supp. 675, 684 (W.D.N.Y.1941) (real estate broker charged only with finding potential purchasers not an agent and owes no fiduciary duties to property owner), *aff'd,* 128 F.2d 889 (2d Cir.), *cert. denied,* 317 U.S. 674, 63 S.Ct. 79, 87 L.Ed. 541 (1942); *Knauss v. Gottfried Krueger Brewing Co.,* 142 N.Y. 70, 36 N.E. 867 (1894) (no fiduciary duties owed by finder with no authority to bind principal).

There are no allegations that Bankers Trust was granted any authority beyond the Financial Advisor Agreement. There are no allegations that Bankers Trust was conducting itself in any way other than pursuant to terms of that agreement—in fact, the crux of VOC's claim is that Bankers Trust was not finding prospects. Consequently, according to the Complaint, "by agreement and through the actions of the parties" the relationship between VOC and Bankers Trust as "exclusive marketing agent" does not include a fiduciary duty under New York law. *See also BAII Banking Corp. v. Atlantic Richfield Co.,* No. 86 Civ. 6651, 1993 WL 403963, at *20 (S.D.N.Y. Oct. 7, 1993) (comparing duties of brokers and finders).

Accordingly, none of the parties against whom the plaintiffs claim a breach of fiduciary duty were under such a duty and those claims in Count VIII are dismissed.

## VII.

 The third count sets forth a claim for breach of contract based on the Financial Advisor Agreement. (Compl.Ex. 4.) Plaintiffs assert that Bankers Trust breached that agreement when it withdrew from it on November 27, 1990. (*See* Compl. ¶¶ 37, 59; Eizenman Aff. Ex. C.) Bankers Trust argues that this agreement was an open-ended exclusive agency, terminable at will by either party.

 Bankers Trust's argument fails. While it is true that an exclusive agency of unlimited duration is terminable at will under New York law, *see, e.g., Foster v. Citrus Co. Land Bureau, Inc.,* 133 A.D.2d 665, 666, 519 N.Y.S.2d 836, 837 (2d Dep't 1987); *Conrad v. Golden,* 275 A.D. 946, ——, 89 N.Y.S.2d 689, 690 (2d Dep't 1949), the Financial Advisor

Agreement does not establish a principal-agent relationship between VOC and Bankers Trust, as explained above. In any event, the "exclusive agency" relationship that existed between VOC and Bankers Trust by virtue of the Financial Advisor Agreement was limited in duration.

The agreement provides that Bankers Trust's authorization to solicit investors as VOC's "exclusive agent" became effective "upon execution of this Agreement and shall remain in effect 180 days after [VOC's] approval of the completed Offering Memorandum discussed below." (Compl.Ex. 4, ¶ 2.) The agreement further provides that the Offering Memorandum shall be prepared by Bankers Trust starting on April 1, 1990, or a later agreed-upon date if requested by VOC, and completed within 45 days. (Compl.Ex. 4, ¶ 4.) VOC alleges that it paid $50,000 to Bankers Trust to initiate preparation of the Offering Memorandum, (Compl. ¶ 33), in accordance with the terms of the agreement. (Compl.Ex. 4, ¶ 4.) Indeed, the termination letter submitted by Bankers Trust appears to acknowledge this payment was made and that VOC had directed Bankers Trust to begin preparation of the offering materials in September 1990. (*See* Eizenman Aff.Ex. C.) Finally, VOC alleges that it performed all of its required conditions, covenants and obligations under the Financial Advisor Agreement. (Compl. ¶ 58.)

Assuming these allegations are true, as I must on a motion to dismiss, the effectiveness of Bankers Trust's authorization to act as VOC's exclusive marketing agent was limited by two specific time periods. First there was the 45-day period that was apparently triggered in September 1990, and within which Bankers Trust was to complete preparation of the Offering Memorandum. Second, there was the additional 180 days following VOC's approval of those materials. Therefore, the agreement was limited in duration, and, to the extent it was an agency agreement at all, it could not be terminated at will by either party. VOC's allegation that Bankers Trust breached the agreement by terminating it on November 27, 1990 states a claim for breach of contract, and

Bankers Trust's motion to dismiss that claim is denied.

## VIII.

Count IX realleges each of the factual bases for the breach of fiduciary duty as a claim for breach of the covenant of good faith and fair dealing, adding a further allegation that Bankers Trust failed to negotiate for the extension in good faith. (Compl. ¶¶ 97–100.) This claim is asserted by VOC, Dayton–Canon, and Geminus. Under New York law, an implied covenant of good faith and fair dealing is implied in every contract. *See Fasolino Foods Co., Inc. v. Banca Nazionale del Lavoro,* 961 F.2d 1052, 1056 (2d Cir.1992); *Frutico,* 833 F.Supp. at 300; *Geler v. National Westminster Bank USA,* 770 F.Supp. 210, 215 (S.D.N.Y.1991). The implied covenant, however, does not create any new contractual rights, *see Fasolino,* 961 F.2d at 1056; *Geler,* 770 F.Supp. at 215, nor does it provide an independent basis for recovery. *See Frutico,* 833 F.Supp. at 300; *Quail Ridge Assocs. v. Chemical Bank,* 162 A.D.2d 917, 919, 558 N.Y.S.2d 655, 657 (3d Dep't 1990).

With respect to Dayton–Canon, there was no contract between Bankers Trust and Dayton–Canon so there was no implied covenant for Bankers Trust to have breached. *See Frutico,* 833 F.Supp. at 301 ("No agreement was reached, and the parties did not owe each other this alleged duty.") With respect to Geminus, the contract with Bankers Trust was a guaranty and had nothing whatsoever to do with an extension of the loan, sale of participation interests, or marketing of the long-term financing. The Complaint does not allege any acts in violation of the provisions of Geminus' debt guaranty and thus there is no claim based upon any alleged breach of the implied covenant of good faith and fair dealing under that contract.

VOC's allegations against Bankers Trust do not support a claim for breach of the implied covenant of good faith and fair dealing either. As explained above, the Loan Agreement expressly permitted Bankers Trust to sell participating interests in the loan and allows for the holders of those

interests to require their consent before any extension would be granted. Therefore, the fact that Bankers Trust sold participation interests in the loan that were accompanied by a right to consent before any extension of the loan was made is entirely consistent with Bankers Trust's rights and duties under the Loan Agreement. With respect to the Financial Advisor Agreement, VOC's allegations are simply a reiteration of its breach of contract claim—a claim that is not dismissed. Because an alleged breach of the implied covenant is not an independent basis for recovery, and because such a claim duplicates the breach of contract claim on the underlying Financial Advisor Agreement, VOC's claim against Bankers Trust based on breach of the implied covenant of good faith and fair dealing is dismissed.

 The plaintiffs also allege Bankers Trust failed to negotiate for the loan extension in good faith. Generally, "the implied covenant of good faith and fair dealing is limited to performance under a contract and does not encompass future dealings or negotiations between the parties." *Bank of New York v. Sasson,* 786 F.Supp. 349, 354 (S.D.N.Y.1992). In *Frutico,* Judge Sweet explained that:

> While parties can bind themselves to an incomplete preliminary agreement by accepting a mutual commitment to negotiate in good faith to reach a final agreement, when no agreement exits, either in principle or in fact, there is no duty to negotiate in good faith that can be enforced against a party to the negotiations.

*Frutico,* 833 F.Supp. at 300 (citations omitted). Here, the plaintiffs point to no agreement between the parties that would impose upon Bankers Trust a duty to negotiate an extension of the loan. There was no requirement in the Loan Agreement or any other document that imposed a contractual obligation on Bankers Trust to extend the loan or to negotiate in good faith for such an extension. Accordingly, the plaintiffs' claim that Bankers Trust breached a duty of good faith and fair dealing with respect to negotiating the loan extension fails as a matter of law because there was no agreement reflected in the documents to negotiate such an extension. Moreover, as explained above, there is no independent claim for breach of the duty of good faith and fair dealing. Therefore the claim for breach of a duty of good faith and fair dealing is dismissed.

### CONCLUSION

For all the reasons set forth in this opinion, the defendants' Motion to Dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(6) is **granted,** except with respect to the claim in Count III for breach of the Financial Advisor Agreement. The motion to dismiss Count III is **denied.**

SO ORDERED.